THE STATE ex rel. LOUIS BERNERO, an Infant, by LORRAINE T. BERNERO, Curatrix, v. EUGENE McQUILLIN, Judge.

In Banc, December 10, 1912.

1. **PROHIBITION: Jurisdiction: Inadequacy of Ordinary Remedies.** If the court has jurisdiction to do what it is about to do, the writ of prohibition will be denied. Mere inadequacy of or delay in other remedies, or hardships springing from or incident to the use of other ordinary remedies, fill a subsidiary office in guiding the discretion of the court in issuing the writ and persuading its issue, but do not, of themselves, furnish the sole ground for the writ.

2. **QUIETING TITLE: Dismissed by Plaintiff: Continued by Defendant.** Under the present statute to quiet title (being Sec. 650, R. S. 1899, with the amendment of 1909, Laws 1909, p. 343, added thereto) a dismissal by plaintiff of his suit to ascertain and determine the title to described real estate, does not *ex necessitate* carry the entire case out of court; but defendant,

having asserted title in his answer, upon which he demands affirmative relief, is entitled to remain in court and have a decree or judgment determining the title as between him and plaintiff.

3. ———: ———: ———: Interpretation of Statute. The venerable and salutary rule for the interpretation of a statute announced in Haydon's Case, 3 Coke's Rep. 7 b., pp. 19-20, is adopted, namely: For the sure and true interpretation of all statutes, be they penal or beneficial, restrictive or enlarging of the common law, four things are to be discerned and considered: 1st, What was the common law before the making of the act? 2d, What was the mischief or defect for which the common law did not provide? 3d, What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth; and, 4th, The true reason of the remedy; and then the office of all the judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief, and *pro privato commodo*, and to add force and life to the cure and remedy, according to the true intent of the makers of the act, *pro bono publico*.

4. ———: ———: ———: ———: As Applied to Amendment. to Sec. 650. In the light of the above rule, it having been formerly adjudged that under old section 650 the court would leave the parties, to a suit to quiet title, to another suit to enforce their rights under a mortgage or other lien, or under some trust requiring an accounting, or under some equities to adjust; and it being known to the court that in some circuit courts a defendant, after a dismissal by plaintiff, could not, under section 650, hold plaintiff in court to try out and settle a claim and title asserted by defendant against plaintiff, it is *held*, that the broad language of the amendment of 1909 to said section 650, which provides that "upon the trial of such cause, if same be asked for in the pleadings of either party, the court may hear and finally determine any and all rights, claims, interests, liens and demands whatsoever of the parties, or of any one of them," the mere dismissal of his suit by plaintiff does not carry the entire case out of court, but defendant, having in his answer asserted title in himself and asked for affirmative relief, is entitled to remain in court and invoke the court's decree or judgment.

5. ———: Will Contest Pending: Refusal to Continue or Stay: Prohibition. An application for a continuance, or a motion in the nature of such application to stay the trial of the suit, is directed to the sound discretion of the court, and raises a question reviewable on appeal, but does not raise a question of jurisdiction. So that where plaintiff, claiming as devisee under

State ex rel. v. McQuillin.

a will, brought suit to quiet title, and afterwards brought another suit in the same court to contest a will under which defendants in the first suit had set up title to the land, and, the suit to quiet title being reached for trial on the docket, filed his motion to continue or stay the suit to quiet title until the validity of the will be determined in the other suit, this last motion did not raise a question of jurisdiction, but only a question of discretion, which, if wrongfully ruled, may be corrected on appeal, though the motion suggested a safe course of procedure.

6. ———: ———: **Contest Vacates Probate of Will: Prohibition.** If it be true that a suit to contest a will vacates a formal probate of the will, and that defendants in the suit to quiet title, depending wholly on the validity of that will, cannot maintain their cross action in the suit to quiet title until the will be confirmed, the court will commit only error if it adjudge title to defendants pending the will contest, and that error can be corrected by ordinary remedy on appeal, and therefore prohibition will not lie to prohibit the trial court from trying the suit to quiet title until the will contest, already instituted, be determined.

7. ———: **Question of Estate Devised by Will: Prohibition.** Whether or not plaintiff in a suit to quiet title took title to the real estate under a will, is not for consideration in determining whether a writ of prohibition should go to prohibit the trial court from trying the suit to quiet title until another suit to contest another will under which defendants claim is determined. The question of whether the will vests the title in plaintiff can be determined on appeal or writ of error.

8. ———: **Will Contest: Right to Maintain: Merits: Prohibition.** Neither the merits of the suit to quiet title nor the merits of the suit to contest the validity of a will under which defendants claim title are for consideration on prohibition. The trial judge's jurisdiction does not depend upon his views of the meaning of that will. So that neither the trial court, nor this court in determining whether or not a writ of prohibition shall issue, can determine whether or not relator can maintain a suit to set aside a will under which defendants in the suit to quiet title claim.

## Prohibition.

WRIT DENIED.

*Thomas D. Cannon, Moses N. Sale, David Goldsmith, Ernest P. McCarthy* and *John A. Burke* for relator.

(1) The relator was entitled to dismiss his petition in the action to quiet title; and when the dismissal was entered, it ended the entire case, and accordingly the jurisdiction of the court to proceed further ceased. Gray v. Ward, 234 Mo. 291; Mann v. Doerr, 222 Mo. 11; Podesta v. Land Co., 152 Mo. App. 396. (2) The respondent was entirely without jurisdiction to hear and determine the question whether the relator here was or was not a proper party plaintiff in the suit to contest the alleged will of Theresa Bernero, under the provisions of Sec. 555, R. S. 1909, because said will contest was not pending before respondent for hearing or consideration. In said will contest the plaintiff (relator here) pleaded that he was "heir at law, next of kin and grandchild of said Theresa Bernero, deceased." And the respondent in the case pending before him (the suit to quiet title), could not and had no power to hear and determine the issues made in the will contest which was not pending before him for hearing or consideration. A question of proper parties plaintiff and defendant in said will contest can only be heard and determined in that case by a court having jurisdiction thereof and in a proper and lawful proceeding, and when the proper parties are before the court. Hope v. Blair, 105 Mo. 85; State ex rel. v. Muench, 217 Mo. 137; State ex rel. v. Williams, 221 Mo. 252; Munday v. Vail, 34 N. J. L. 422. (3) No right can be predicated upon the provisions of the alleged will of Theresa Bernero, deceased, until and unless it has been admitted to probate by a court of competent jurisdiction. It affirmatively appeared that the relator had prior to April 2, 1912, filed a suit under the provisions of Sec. 555, R. S. 1909, to contest the alleged will of Theresa Bernero, that plaintiff alleged in said will contest that he was an "heir at law, next of kin and grandchild" of the said Theresa Bernero. The defendants base their defense and cross-bills upon the provisions of said alleged will, notwithstanding that

said alleged will is being contested, as aforesaid, and has not been admitted to probate in solemn form. Until the alleged will is probated in solemn form, if ever, it is a mere scroll or writing of no force or effect; the defendants or either of them can predicate no right or title upon its terms, and the circuit court could not lawfully enter a judgment construing its provisions. State ex rel. v. Imel, 243 Mo. 174; Hartwell v. Parks, 240 Mo. 537; Farris v. Burchard, 242 Mo. 1; State ex rel. v. Guinotte, 156 Mo. 513; Schaff v. Peters, 111 Mo. App. 447; Bridwell v. Swank, 84 Mo. App. 455; Lamb v. Helm, 56 Mo. 420. (4) The respondent cannot make any order or judgment in the suit to quiet title that would be effective, while the will contest is still pending and undetermined. If the alleged will of Theresa Bernero, deceased, should be found by the jury not to be her last will, an appeal from an adverse judgment in the suit to quiet title would not afford plaintiff in the latter suit an adequate and complete remedy. Our courts frequently treat for prohibition purposes, an improper exercise of jurisdiction, or an excessive application of judicial force, as though no jurisdiction existed. It appearing therefore that no other remedy except prohibition will do the relator complete, speedy and adequate justice, this court will prohibit the respondent from further proceedings in said suit to quiet title, until such time as the said will contest has been tried and decided. Sherkey v. Kiernan, 97 Mo. 105; State ex rel. v. Bright, 224 Mo. 535; State ex rel. v. Williams, 221 Mo. 246; State v. Denton, 128 Mo. App. 304; State ex rel. v. Sale, 188 Mo. 496; State ex rel. v. Eby, 170 Mo. 526; State ex rel. v. Spencer, 166 Mo. 278; State ex rel. v. Aloe, 152 Mo. 483; State ex rel. v. Elkin, 130 Mo. 109; Carter v. Bolster, 122 Mo. App. 144; State ex rel. v. Fort, 107 Mo. App. 337; State ex rel. v. Cline, 85 Mo. App. 632; State ex rel. v. Allen, 45 Mo. App. 563; Craycroft v. Superior Court, 124 Pac. 1045; White v. Superior Court, 126 Cal. 247; Cronan v. Dist.

Court, 96 Pac. 768; Terrill v. Superior Court, 60 Pac. 40; Havemeyer v. Superior Court, 84 Cal. 395; State v. County Court, 97 Wis. 15.

*Stewart, Bryan & Williams* and *McShane & Goodwin* for respondent.

(1) Relator must be injured or affected by the proceedings sought to be restrained; otherwise prohibition will not lie. 32 Cyc. 622; State ex rel. v. Main, 113 Pac. 632; State ex rel. v. Prosser, 2 Wash. 530. This court will not determine whether the writ prayed for should go, unless relator is interested in or affected by the action sought to be restrained. State ex rel. v. Blake, 241 Mo. 100; Ordelheide v. Modern Brotherhood, 226 Mo. 203. Relator must be a right heir of Louis Bernero before he can be interested in or affected by the action of the lower court. Relator is the child of Manuello Bernero, who he claims was adopted by Louis Bernero, deceased. Under such facts, if true, relator cannot be a "right heir" of Louis Bernero. Reinders v. Koppelman, 94 Mo. 338; Clarkson v. Hatton, 143 Mo. 47; Hockaday v. Lynn, 200 Mo. 456. "Right heirs" are such persons upon whom descent is cast by the law of descent and distribution. Heirs created by adoption are "contract heirs," and do not take under the Statutes of Descents and Distributions, but by virtue of their contract. Thus, an adopted child and his descendants cannot be "right heirs." Relator therefore has no interest in and cannot be affected by any action of respondent in the suit sought to be prohibited. Cases above cited. (2) Respondent has the power, authority and jurisdiction to hear and determine the request or prayer of defendants for cross-relief in suits to quiet title after plaintiff has dismissed his petition. R. S. 1909, Sec. 2535. This particular power was granted respondent by the Legislature in 1909. Laws 1909, p. 343. Re-

spondent had jurisdiction to pass upon relator's application for a stay.   McMahon v. Hubbard, 217. Mo. 624.

LAMM, J.—Prohibition.  Original proceeding. To our preliminary rule citing Judge McQuillin to show cause, he made return admitting some, and raising an issue of fact on certain other, allegations of the petition.   Relator replied to that return, raising an issue of fact on certain allegations of that return.   Thereupon by stipulation, to avoid a commissioner to take proof, there is filed here an exemplification of the record entries, evidence, motions and pleas in a certain suit brought by relator to quiet title, and a petition in a certain other suit brought by relator to contest a will, to which exemplification we are referred in order to determine the controverted issues.  The suit to quiet title will be hereinafter called "A," that to contest the will will be called "B," for brevity and convenience of reference.

Briefly, to get our bearings at the outset, we are asked by relator to prohibit the trial of a cross-action in A, until such time as B has been determined—both A and B being pending at the same time in Judge McQuillin's division of the circuit court of the city of St. Louis.

The issues here are of a kind seeking a summary of the pleadings and situation *nisi* in A, and the vital facts constituting the history of that suit at the time our preliminary rule was passed and served.

[NOTE:  There are two Louis Berneros mentioned in the record, we will call one Louis the elder, the other (the relator, an infant) Louis the younger.  The wife of Louis the elder was named Theresa.  In this opinion she will be called by her given name alone.  The land in dispute in A has a long description.  It is a valuable lot in the city of St. Louis and for convenience of reference will be called "X."  There is another Bernero mentioned in the record named Manuello.

He is the nephew of the elder and father of the younger Louis and will be called by his surname alone.]

A synopsis of the history of A is this:

The last of August, 1911, Louis the younger (through his mother as curatrix) instituted A. In January, 1912, an amended petition was filed, the object and general nature of which was to determine and adjudge title to X. The amended petition, as was the original, is founded on Sec. 2535, R. S. 1909, formerly section 650, amended in 1909 (Laws 1909, pp. 343-4). Thereby it was alleged, in substance, that Louis the younger is the only child and heir of Manuello; that Manuello died in 1910; that in the year 1880 Manuello was adopted by Louis the elder and Theresa as their son; was "educated, proclaimed, published and maintained" as their son and was, in fact, their adopted son; that Louis the elder died in 1904 testate, owning X; that his will, duly probated in 1904, by its fifth clause disposed of X by giving and devising it to his wife, Theresa, and adopted son, Manuello, in the terms following (quoting):

". . . to have and enjoy for and during the term of her natural life, and at the time of her death the same to pass to our adopted son, Manuello Bernero, if he shall survive her, to have and enjoy during his natural life, and at his decease to pass to and vest in fee in his children, if any he have, or their descendants, but in default or failure of such direct heirs, children or grandchildren him surviving, then at the time of his death the title to said realty in fee shall pass to and vest in my right heirs; if, however, my said wife shall survive said Manuello, then she, said Theresa Bernero, is hereby empowered to devise said realty as she shall see fit, or if she shall fail to make such testamentary disposition of same, then said realty, upon her death, shall vest in my right heirs, if she shall survive said Manuello; I authorize and empower my said wife during her lifetime, and if said Manuello

shall survive her and enter upon the enjoyment of said realty, then said Manuello, during his lifetime, to lease said realty thus bequeathed to them for life as aforesaid, successively, on such terms as they severally deem proper, each exercising such right during her or his life-tenancy, for leasehold periods not exceeding twenty-five years each.''

Suit A is against the St. Louis Union Trust Company and divers codefendants named Longinotti, and the amended petition goes on to allege that Theresa died in July, 1911; that by reason of the will of the elder Louis, the younger Louis became owner in fee simple of, and claims a fee simple title to, X; that defendants claim some title, estate or interest to and in X, which claim is adverse and prejudicial to that of plaintiff. The prayer is as follows:

''Wherefore, plaintiff prays the court to try, ascertain and determine the estates, title and interest of the plaintiff and defendants, of, in and to the said land and real property hereinbefore described, and by its decree to adjudge, determine, settle, quiet and define the respective rights, titles, interests and estates of plaintiff and defendants to said land and real property; and plaintiff further prays that if the court finds that he is the sole owner of the land and real property hereinbefore described, then an order and decree be entered of record forever barring and precluding the defendants and each of them as well as all persons claiming by, through or under said defendants, from hereafter setting up any title or claim to said real property and for all other proper orders and relief in the premises.''

To that amended petition, defendant trust company answered making certain admissions, but denying that Manuello was the adopted son of Louis the elder and Theresa, and denying that Louis the younger had any title or interest in X under the will of the elder Louis.

In a subsequent paragraph of its answer, it undertakes to put its own construction on the fifth clause of the elder Louis's will—averring, among other things, that by that clause Theresa had testamentary power over X, in case she survived Manuello, that she had survived him and exercised such testamentary power, and that by the eleventh clause of her duly probated will she devised X to defendant trust company in trust for its codefendants, the Longinottis, who were children of Theresa's sister, Clotilda Longinotti. The eleventh clause of Theresa's will is very long, and for our purposes need not be reproduced *ipsissimis verbis*. The foregoing summary will do.

The trust company's answer concludes thus:

"Wherefore, this defendant asks for judgment against the plaintiff herein, and prays further that the right and title in and to the real estate set out and described in plaintiff's petition be ascertained, determined and quieted, and that by appropriate decree the title to said real estate shall be declared to be well vested in the defendant herein under and pursuant to the terms of the eleventh clause of the said will of said Theresa Bernero, deceased; and that the plaintiff, and all persons claiming by, through or under him, be forever barred from hereafter asserting or setting up and" (*sic*) "title or claim to said real estate."

Some of the Longinottis were minors and answered by *guardian ad litem.* The adults answered in a group to themselves. The answers are the same in legal effect, *mutatis mutandis,* and, barring the cross-action or counterclaim, neither differs materially from that of their codefendant trust company.

However, each of the Longinotti answers contained the following matter, designated in a caption in these words: "For further answer and by way of cross-relief or counterclaim against plaintiff, these defendants state as follows." Under that caption it is

alleged that Louis the elder died testate seized of X; that his will remains in force and effect and contains the fifth clause, setting it forth in words and figures (sufficiently appearing heretofore). That the Manuello mentioned in the fifth clause is the father of Louis the younger, plaintiff. That the elder Louis died leaving the Theresa mentioned in the fifth clause, his widow, surviving him; that Manuello died before Theresa; that Theresa left a will, duly probated; that by virtue of the power and authority vested in Theresa by the will of Louis the elder she devised X to the defendant trust company in trust for the use and benefit of the Longinottis, etc. Theresa's will is next set forth in full in words and figures, the eleventh clause of which devises X to defendant trust company and gives directions heading to the execution of that trust. It is next alleged that in Theresa's will defendant trust company was nominated executor; that by one provision thereof a sister of Theresa, Clotilda (mother of the other Longinottis made defendants in suit A) was made residuary legatee; that defendant trust company qualified as executor and took upon itself the burden of that trust, as well as that of the trust created by clause eleven, and is now in possession of X as trustee and executor.

The answer concluded as follows:

"That plaintiff by his present action claims the fee simple title to said real estate and such claim is a menace and cloud upon the title and interest of defendants, disturbing and menacing their quiet, lawful and profitable enjoyment of the said real property and their respective interests in the same.

"Wherefore defendants, and each of them, pray the court to try, ascertain and determine the estates, titles and interests of themselves, of, in and to the said lands and real property herein described and by its decree to adjudge, determine, settle, quiet and define their respective rights, titles, interests and estates

to said lands and real property; defendants further pray that the court decree that said plaintiff has no right, title or interest of whatever kind or description, in and to said described real estate, and defendants further pray that if the court finds they are the owners of said described real estate as herein set forth an order and decree be entered of record, forever barring and precluding the plaintiff, as well as all persons claiming by, through or under said plaintiff and all other persons from thereafter setting up any title or claim to said real property, and for all relief as from the premises shall be meet and just.''

With the petition and answers in A as outlined, plaintiff filed in turn demurrers to, and motions to strike out, the matter in the answers constituting the counterclaim or cross-action looking to affirmative relief, and also matter putting defendants' construction on clause five of the will of Louis the elder. These motions and demurrers, with grounds alleged in each, are mere *impedimenta,* for our present purposes, and may be put aside. They were each and all overruled. Finally plaintiff filed replications to the several answers. One of these replies will do as a sample of all, viz.:

''Now at this day comes the plaintiff by his curator Lorraine T. Bernero, and for his reply to the second count of the separate answer of Joseph J., Ida, Florence, Marie, Laura, and Louis Longinotti and Theresa L. Goodwin defendants, filed herein, admits that he claims the fee simple title to the real estate in said answer described; and he denies each and every other allegation in said second count of said answer made and contained.

''Further replying the plaintiff denies that the said defendants or the other defendants herein, have any right, title or interest in and to the said real estate described in said answer.

"Further replying the plaintiff denies that the instrument purporting to be the last will of Theresa Bernero in the said separate answer of the defendants set forth, is the last will of said Theresa Bernero.

"Further replying, the plaintiff denies that said Theresa Bernero by her alleged will intended to exercise or did exercise the alleged power alleged to have been given her by virtue of the will of Louis Bernero, deceased.

"Further replying the plaintiff says that the said 11th clause of the said alleged will of Theresa Bernero, deceased, is in conflict with and contrary to the rule against perpetuities and is illegal and void, and neither the said defendants nor the other defendants herein derived any title or estate, by or through the said 11th clause of said alleged will of Theresa Bernero, deceased.

"Wherefore the plaintiff says that he is entitled to the judgment and decree of this court as in his petition prayed.

"II. The plaintiff for his reply to the third count of the separate answer of Joseph J., Ida, Florence, Laura, Marie and Louis Longinotti and Theresa L. Goodwin defendants, filed herein, admits that he claims the fee simple title to the real estate in said answer described: and he denies each and every other allegation in said third count of said separate answer made and contained.

"Further replying the plaintiff denies that the said defendants or the other defendants herein, have any right, title or interest in and to the said real estate described in said answer.

"Further replying the plaintiff denies that the instrument purporting to be the last will of Theresa Bernero in said separate answer of the defendants, set forth, is the last will of said Theresa Bernero.

246 Sup.—34

"Further replying the plaintiff denies that said Theresa Bernero by her alleged will intended to exercise or did exercise the alleged power alleged to have been given to her by virtue of the will of Louis Bernero, deceased.

"Further replying the plaintiff says that the said 11th clause of the said alleged will of Theresa Bernero, deceased, is in conflict with and contrary to the rule against perpetuities and is illegal and void, and neither the defendants aforesaid, nor the other defendants herein, derived any title, interest or estate, by or through the said 11th clause of the said alleged will of Theresa Bernero, deceased.

"Wherefore the plaintiff says that he is entitled to the judgment and decree of this court as in his petition prayed."

The replies were filed on March 5, 1912. On the 20th of that same month, Louis the younger brought another suit, B, in respondent's division of the circuit court of St. Louis, to contest the will of Theresa, making not only the Longinotti children and the St. Louis Union Trust Company, but a great many other persons and eleemosynary institutions (legatees in Theresa's will) parties defendant, and grounding his action on the averment, among others, that he, Louis the younger, was Theresa's "heir at law." The petition in B sets forth Theresa's will, cutting the younger Louis off with $10,000, put in trust for him on given conditions, and then states that she did not have testamentary capacity because of advanced years, feeble health and diseased conditions of mind and memory, etc., was possessed of insane delusions, hallucinations relating to Louis the younger and his mother, the widow of Manuello; that she was under the influence and control of her sister, Clotilda, and of certain named Longinotti children and of the St. Louis Union Trust Company and its officers; that the will was the product of such undue influence and of such lack of

testamentary capacity, and was not Theresa's own free act, wherefore it should be declared void and of no effect.

Recurring again to suit A. After B was instituted and some of the parties defendant served with process, A was regularly reached for trial on respondent's docket, and was called for trial. Thereat plaintiff orally and by written motions called respondent's attention to the pendency of B to contest the will, and prayed that A be continued or stayed until the validity of Theresa's will was determined in B. Something is made by counsel for respondent at our bar, of the fact that certain steps were taken in calling the court's attention to suit B after the trial of A was on, but the exemplification filed here discloses a condition of things destroying all significance of that phase, in so far as it guides our discretion in issuing a writ of prohibition; hence we lay the matter on the shelf without more ado. We will refer to certain matter injected by defendants into the hearing of those motions later in this opinion.

On respondent's refusing to continue or stay A (to await a determination of B), plaintiff dismissed his action, an entry being made to that effect. Thereat defendants insisted that respondent retain jurisdiction in A to go on and try the cross-action or counterclaim set up in their answers. Respondent, taking that view of it, was proceeding with such trial. Thereat plaintiff filed a motion to dismiss defendants' cross-action—this on the theory it went out of court with his dismissal of his own. That motion was overruled.

As the next step, plaintiff below (relator here) filed his suggestions for our writ of prohibition to stay proceedings in A until B could be determined. Said suggestions, together with respondent's return, need not be reproduced; a reference to one phase of the return will receive some attention later on.

We have reached the conclusion the preliminary rule in prohibition should be quashed and a writ denied. This, because:

(a) The unbending test to be applied to determine whether a writ of prohibition should issue in a given case, is this: Has the court, complained of, jurisdiction to do what it is about to do? It matters little whether it is in fault in proceeding without any jurisdiction at all, or (as put in some cases) in excess of its jurisdiction, the writ will go in either event. So, in a given case, though the court has general jurisdiction of that class of cases, if it is about to do in that case some particular important thing which it has no judicial power to do, the writ has been allowed. Appellate courts have not always been able to hold the same language in formulating the same or equivalent propositions pertaining to prohibition, and cases may be found where, speaking to the test measuring the right to the writ, the words of the judge in his exposition have not been precisely as announced above. But the better doctrine is that, aside from cases coming fairly within the lines of the general proposition just announced, the extraordinary remedy by prohibition is not available. Agreeably thereto is a line of cases, of which State ex rel. v. Bright, 224 Mo. 514; State ex rel. v. Tracy, 237 Mo. 109; State ex rel. v. Shelton, 238 Mo. l. c. 292, *et seq.*, are samples.

Mere inadequacy of, or delay in, other remedies, or hardships springing from, or incident to, the use of other more ordinary remedies, when such exist, fill a subsidiary office in guiding the discretion of the court in issuing this extraordinary writ, and persuading its issue, but do not, by themselves, furnish sole grounds for the writ. [State ex rel. v. Tracy, supra; State ex rel. v. Shelton, supra.]

The case must be ruled in view of such premises, and not otherwise.

(b) The first and main proposition may be stated in this way: It is argued on behalf of respondent that an amendment to old section 650 adopted in 1909 (Laws 1909, p. 343) gives the court jurisdiction to hold defendants' cross-action in court despite plaintiff's dismissal of his suit to quiet title. *Contra*, on behalf of relator, it is argued thus: Said amendment has no such province or efficacy; its force is exhausted in another direction. We are cited to two cases which, as interpreted by relator's counsel, are claimed to announce that doctrine, to-wit: Gray v. Ward, 234 Mo. 291; Podesta v. Land Company, 152 Mo. App. 393.

The amendment in judgment is of substance, and has not hitherto been directly drawn within the lines of judicial exposition in any case turning on the point. Its gravity, therefore, bespeaks caution and a full consideration.

It will serve a purpose to reproduce Sec. 650 (R. S. 1899) as it stood prior to the amendment of 1909 in juxtaposition with the amendment itself, as it now appears as part of Sec. 2535 (R. S. 1909), thus:

**Former Section 650.**

"Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property."

**Amendment Added in 1909.**

"And upon the trial of such cause, *if same be asked for in the pleadings of either party*, the court may hear and finally determine any and all rights, claims, interests, liens and demands whatsoever of the parties, or of any one of them, concerning or affecting said real property, and may award full and complete relief, whether legal or equitable, to the several parties, and each of them, as fully and with the same force and effect as the court might or could in any other or different action brought by the parties, or any of them, to enforce any such right, claim, interest, lien or demand, and the judgment or decree of the court when so rendered shall be as effectual between the parties thereto as if rendered in any other, different or separate action prosecuted therefor."

The original section was couched in most general and comprehensive terms and its judicial interpretation has been correspondingly liberal. [See for example, Huff v. Land & Imp. Co., 157 Mo. 65.] Mark, the amendment is also couched in comprehensive and broad terms, hence should receive a construction in aid of the broad intendments of the lawmaker.

In Heydon's Case (3 Coke's Reports, 7 b., pp. 19-20) referring to an older case decided by Sir Roger Manwood, Chief Baron, and the other barons of the Exchequer, we find the following rule for construing new statutes: "And it was resolved by them, that for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law) four things are to be discerned and considered: 1st. What was the common law before the making of the act? 2nd. What was the mischief and defect for which the common law did not provide? 3rd. What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth. And, 4th. The true reason of the remedy; and then the office of all the judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief, and *pro privato commodo,* and to add force and life to the cure and remedy, according to the true intent of the makers of the act, *pro bono publico.*"

That venerable and salutary rule of interpreting new statutes, having never been improved upon since Queen Elizabeth's day, is brought down as a live and just one to our own. Agreeably thereto many cases might be cited, but (under the precept, *Ex uno disces omnes*) we refer to only one. In the Matter of Bomino's Estate, 83 Mo. l. c. 441, where Philips, C., puts the matter in a nutshell, thus: "The occasion and necessity of the law, the mischief felt, and the object and remedy in view are to be considered."

Quickened by that rule, let us attend to the amendment in hand.

What were the mischiefs not touched by section 650? What were the occasions and necessities of the amendment? What were the objects and remedies in view therein? The answer is not far to seek. We had held under section 650 we would go no further than to declare and adjudge the state of the title, claim, interest, etc. That is, if there was a mortgage or other lien, or some trust requiring an accounting, or some equities to adjust, etc., we would adjudge the fact to be so and so and then leave parties to another suit to enforce their rights under such lien, equity, trust, etc. [Wilson v. Lubke, 176 Mo. l. c. 217, *et seq.*; Howard v. Brown, 197 Mo. l. c. 50, *et seq.*; Powell v. Crow, 204 Mo. l. c. 485, *et seq.*; Seidel v. Cornwell, 116 Mo. l. c. 55, *et seq.*]

Manifestly, the lawmaker had those cases in mind and, therefore, one object of the amendment was to avoid a multiplicity of suits, to give parties one day in court, not two. To that end, as one object, the amendment applied a statutory torch to the mischiefs uncovered by the learning of those cases. In Podesta v. Land Company, 152 Mo. App. l. c. 396, GRAY, J., points out that view of the amendment.

But it is neither necessary nor seemly that appellate courts should pretend to know less than the rest of mankind. We may (with becoming modesty) claim judicially to know facts of current history as well as lawmakers or other people do. It is too narrow a view to take of the amendment to say it was intended only to remedy defects in the old law that had been pointed out by this court in those cases. The lawmaker knew another thing, as do we, viz., that bar and courts were in doubt as to whether, under 650 as it formerly stood, a defendant could hold plaintiff in court to try out and settle a claim and title asserted by defendant against plaintiff to the land in dispute. On some circuits the

rule of practice was one way; on others, the other way. It was, we think, to remedy that evil also that the lawmaker amended the law and made it read as it now does. Looking to the reason of the thing, surely there can be nothing inherently unjust in the proposition that when a plaintiff goes into court and lugs his antagonist in, asserting a claim to land which that antagonist in turn claims, such plaintiff (when the pleadings admit) should not dismiss his case at will, thereby taking his antagonist's claim out of court and leaving the way clear to harass him with a new suit thereafter. Such course tends to the stagnation of land sales by permitting clouds to remain on titles and lurk in abeyance under cover for speculative ends. It is no adequate answer to suggest that the door is open to defendant himself to bring his own independent suit. Why should he do that? He has already employed counsel, made ready for trial, raised an issue and demanded relief. He is already in court confronting his antagonist with his claim of title, which he asserts in his pleading and on which he demands affirmative relief. Is there any such virtue or charm in bringing new suits (and thereby encouraging litigation) that we should put an unnecessarily strained and narrowing construction on a remedial statute heading to a contrary end? The amendment provides that when *either* party ask it the court may go on and settle the title. When the whole amendment is construed, its intendment got at and full effect given to all its terms, a fair and just construction precludes, we think, the idea that a plaintiff, at his own will, by dismissing his suit, may destroy the jurisdiction of the court to proceed in cases where defendants, as here, by appropriate pleadings set up their own claim and title, charging that plaintiff makes an adverse claim, and praying for affirmative relief.

In Gray v. Ward, 234 Mo. 291, there is some language, that, at first blush, seems not in accord with

the holding just made. But well looked to and rightly understood, there is no conflict in exposition between that case and this. The judgment in the Gray-Ward case was rendered in 1906 or 7, as our files show. What was said in that case is referable to the facts there held in judgment. Such is the rule for determining what a case decides, within the purview of the doctrine of *stare decisis*. [State ex rel. Bixby v. St. Louis, 241 Mo. 231.] Section 650 was in force when the judgment in the Gray-Ward case was rendered. The section remained operative for the purposes of the appeal, although the appeal itself was not decided until after the amendment was adopted. The under court could not be convicted of error in the Gray-Ward case, because of an amendment of the substantive law effective three years later.

There are two statutes—one relating to nonsuits (Sec. 1980, R. S. 1909) the other to counterclaims and set-offs (Sec. 1878, R. S. 1909)—which have been frequently held in judgment by this court. Section 1980 allows a plaintiff to dismiss his suit before final submission. Section 1878 declares that a set-off or counterclaim shall be deemed an independent action begun by defendant. It then provides that the dismissal of plaintiff's action shall not operate to dismiss defendant's, but he may go on and prosecute his action against plaintiff the same as if he had originally begun his action on the set-off or counterclaim. Something is made of those sections, and the learning thereon, in briefs; but in the view we have taken of the 1909 amendment to old section 650, it is not necessary to decide whether defendant could or could not stay in court, after plaintiff dismissed his action, by virtue of section 1878, or under the ancient equity practice relating to cross-bills. Something might be said in behalf of and against the view that defendants stayed in court and could go on under the doctrine of such cases as Fulton v. Fisher, 239 Mo. 116; Lanyon v. Ches-

ney, 209 Mo. 1; Hamlin v. Walker, 228 Mo. 611; Atkinson v. Carter, 101 Mo. App. 477; but we reserve the question without deciding it.

If plaintiff, by dismissing his suit A, took defendants' cross-action out of court, then there was no jurisdiction to try that cross-action and the writ should go. But the contrary being true the point is ruled against relator.

(c) With the foregoing main question set at rest, the case is practically decided against relator. There are, however, some subsidiary propositions, on which we may with propriety make some observations.

(1) It is argued, as we get the run of it, that even if defendants are entitled to remain in court in suit A to try out their title, and if the court had jurisdiction to try the cross-action (as held in paragraph b), yet respondent had no jurisdiction to go on in that case, because of the pendency of suit B. But we cannot follow the lead of that suggestion. The most we can make of plaintiff's overruled motions in A is that they were applications for a continuance, or in the nature of such applications. Now, it is trite learning that such applications are directed to the sound discretion of the court—a discretion, to be sure, reviewable on appeal, but none the less a question of *discretion*, not one of *jurisdiction*. Relator's learned counsel cite no case to the contrary, and we believe there could be none soundly ruled on principle. Look at it. A writ of prohibition is asked on the theory the court has no jurisdiction in the premises, to-wit, to try a case. Now relator may not be allowed to have his writ on the mere theory the court committed error and abused its discretion in refusing to continue or stay the cause. Relator filed his bill of exceptions and preserved the point. If well preserved he is in nowise without an ample and ordinary remedy.

We do not feel at liberty to decide, with that question not before us, whether the court did or did not

commit error. Such a holding would either preclude or handicap the presentation of the question on an appeal, if one came here hereafter. Besides that, if the court did commit error, the road is still open to correct that error, *nisi;* for the evidence has not all been heard, the cause has not been finally submitted, and it may still stay the proceeding until the will contest is decided. If we may be allowed a question, it is: Would it not be the safer course to let the will contest be determined, before the suit to quiet title is tried? That course would avoid possible and unnecessary complications. Complications of a somewhat similar character (also possible in this cause) caused a judgment to be reversed in Sharkey v. Kiernan, 97 Mo. 102.

(2) There is another proposition discussed in briefs, to-wit: It is asserted by relator, by way of a counterstroke, that the will contest, *ex proprio vigore,* vacated the formal probate of the will of Theresa; therefore, defendants in suit A (who hold title, if at all, only under that will) cannot maintain their cross-action; for (so relator argues) there is no will until after it be solemnly probated in B. We will not be drawn into that fruitful and interesting field of judicial exploration on this application for prohibition; for, if relator's contention be sound then the court will commit error if it adjudge title to defendants pending that contest and that error can be corrected by the ordinary remedy on appeal.

(3) On the other hand, on behalf of respondent, it is argued that under the will of Louis the elder, relator has no title whatever to X. Respondent takes. that view of the matter in his return. Relator complains vehemently of that construction of the will. But evidently that question is not before us at this time on an application for prohibition. It will be determined, if at all, in the course of orderly procedure on error or appeal.

(4)   There is still another contention made by respondent, namely, that Louis the younger, under the facts disclosed, *nisi,* by an ex parte affidavit at the hearing on the motions (and presented here in the exemplification) is not a "party in interest;" therefore B is no will contest at all, within the purview of statutes providing for the trial of an issue of *devisavit vel non.* [Sec. 555, R. S. 1909.]   That section does not permit any one, but only a person interested in the probate of a will, to bring a contest.   [See State ex rel. Damon v. McQuillin, Judge, 246 Mo. 674.]   The next step in the argument is that, in such event, the pendency of that pretended suit could be no valid reason for staying proceedings in A.   We are asked by respondent to hold with him on that point.   But that proposition has nothing to do with issuing a writ of prohibition.   That request we must decline to comply with.   Why should respondent, or this court, assume, on an ex parte showing made below in A, that Louis the younger is not the *heir at law* of Theresa, as he alleges he is in his petition in B?   Neither the merits of A or B are here to be ruled at this time, nor was respondent entitled to determine, or rather *pre*determine, the merits of B in the trial of A, on questions of fact.   In a very late case In Banc (State ex rel. Evans v. Broaddus et al., 245 Mo. 123) the Court of Appeals had before it a mandamus suit to compel a sheriff to put one Evans in the common jail under a warrant of commitment issued by a notary for contempt.   In that case that court undertook to pass upon the merits of *habeas corpus* proceedings pending in a circuit court. This we held could not be done, the issues in one suit could not be disposed of by a side stroke, as a mere collateral incident in another suit.   But respondent's *jurisdiction* did not hinge on his views of the merits of the will contest, or his construction of either will, whether right or wrong.   It turns on the ruling made in paragraph *b.*

The premises all considered, the preliminary rule is discharged and the writ denied. All concur, except *Woodson, J.,* not sitting.