E. W. GRAVES v. STEPHEN M. CHAPMAN et al.; NATIONAL IRON MINING COMPANY, Appellant.

Division One, February 28, 1913.

1. APPEAL: Failure to File Abstract and Brief: Affirmance. Where only one of several defendants in a civil suit files an abstract of the record and briefs in the Supreme Court, the judgment for the plaintiff, upon his request, will be affirmed as to the other appellants.

2. QUIETING TITLE: Dismissal by Plaintiff: Proceeding on Cross-bill: Amendment of 1909: Retrospective Operation. Under Sec. 2535, R. S. 1909 (being Sec. 650, R. S. 1899, as amended in 1909, Laws 1909, p. 343), a dismissal by plaintiff of his petition to quiet title does not dismiss defendant's cross-bill which is in all essentials the same as the petition, and which by the dismissal is transformed into a petition. [Disapproving Gray v. Ward, 234 Mo. 291, and following State ex rel. Bernero v. McQuillin, 246 Mo. 517.] But that amendment does not control in a case instituted prior to its enactment, for then the suit is still governed by old section 650.

3. ————: ————: ————: At Defendant's Request. But notwithstanding the fact that plaintiff dismissed his suit to quiet title as to certain defendants, instituted prior to the amendment ⌐f 1909 to old section 650, if they invited the court to proceed to trial upon their cross-bill, which was in all essentials the same as the petition, and plaintiff's reply thereto, and the court permitted them to do so and rendered judgment for plaintiff, defendants on appeal will not be heard to complain of the action of the trial court in proceeding to judgment. A litigant cannot complain of an error committed at his request.

Graves v. Chapman.

4. ———: ———: ———: ———: **Jurisdiction.** The circuit court has jurisdiction of the subject-matter of a suit to quiet the title to land situate in its county still pending against certain defendants against whom judgment by default has been taken, and when it is dismissed as to certain other defendants and they request the court to retain jurisdiction of the cause notwithstanding such dismissal and proceed with the trial on their cross-bill, they thereby submit themselves to the jurisdiction of the court, and the court, having jurisdiction of both the subject-matter and the parties, has authority to render judgment.

5. ———: **Reversal of Judgment: Against Appellant Without Interest.** Before the Supreme Court will reverse a judgment in favor of plaintiff in a suit to quiet title it must appear from the record that the appellant has some right, title or interest which is adversely affected by the judgment.

6. ———: **Land in Possession of Defendant: No Title in Plaintiff.** Even though the suit to quiet title fails to show title in plaintiff, yet a judgment for him will not be disturbed on appeal, if defendant claims through an admitted squatter and no question of limitations arises in the case, and defendant claims through a deed from such squatter conveying "all the iron ore and all other minerals and mineral substances under the surface of the land," and there is no evidence of the existence of any such minerals, and no evidence that defendant was in any wise in possession.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

AFFIRMED.

*Ernest A. Green* for appellant.

(1) The court erred in finding and adjudging plaintiff to be the owner of the land in controversy. No competent testimony of any kind whatever was offered by plaintiff to show that the grantor named in the deed dated August 4, 1903, Addison F. Burns, under which plaintiff claims, was the same person as either Adam F. Burns, the grantee named in the deed dated May 9, 1873, or Adam T. Burns, the grantee named in the deed dated January 1, 1873. Borders v. Barber, 81 Mo. 636; Leslie v. Coal Co., 110 Mo. 31;

Bank v. Thayer, 184 Mo. 61; Bates v. Bates, 94 Mo. App. 70; Dry Goods Co. v. Mansur, 87 Mo. App. 117; Hendricks v. Calloway, 211 Mo. 558.   (2)   This being an equity case, the Supreme Court will examine into the evidence offered, and consider its competency and admissibility, regardless of objections or exceptions. Since no competent testimony was offered to prove the identity of plaintiff's grantor, Addison F. Burns, with grantees Adam T. Burns and Adam F. Burns, this court will reverse the judgment notwithstanding the record shows no objection was offered to the incompetent testimony.   Gibbs v. Haughowout, 207 Mo. 391; Hanson v. Neal, 215 Mo. 271; Lacks v. Bank, 204 Mo. 479; McKee v. Downing, 224 Mo. 136; Russell v. Sharp, 192 Mo. 291; Lindhorst v. Orphan Asylum, 231 Mo. 389; Harlan v. Moore, 132 Mo. 483; Bush v. Arnold, 50 Mo. App. 8; Davis v. Kline, 96 Mo. 408; Blount v. Spratt, 113 Mo. 48; Warren v. Ritchie, 128 Mo. 311. (3)   The court erred in not finding and adjudging that the plaintiff had no right, estate or title in or to any of the premises in controversy herein.   The testimony in the case abundantly shows that the deeds constituting plaintiff's chain of title, from the patentee, Samuel Petersberger, were forgeries.   Einstein v. Land & Lumber Co., 132 Mo. App. 88; Skinker v. Haagsma, 99 Mo. 208; Lucas v. Land & Cattle Co., 186 Mo. 448; Hunt v. Searcy, 167 Mo. 158; Geer v. Lumber & Mining Co., 134 Mo. 95; Bunch v. Wheeler, 210 Mo. 627; Lacks v. Bank, 204 Mo. 479; Bank v. Nichols, 202 Mo. 320. (4)   The court erred in finding against the appellant upon its cross-bill; appellant being in possession of the lands in controversy, its right of possession would entitle it to a decree against plaintiff who has neither title nor possession.   Duncan v. Able, 99 Mo. 188; Wheeler v. Land Co., 193 Mo. 291; Longacre v. Longacre, 132 Mo. App. 197; Keith v. Bingham, 100 Mo. 300. (5)   The court erred in finding for the plaintiff against the defaulting defendants upon the plaintiff's testi-

mony, because the testimony of plaintiff discloses that plaintiff has neither title to nor possession of the premises in controversy. 5 Cyc. 991, 994; Wheeler v. Land Co., 193 Mo. 291; Gardner v. Robertson, 208 Mo. 605; Richards v. Mining Co., 221 Mo. 149. (6) The dismissal of plaintiff's petition as to this appellant and its co-defendant Isaac Luke, operated as a dismissal of their cross-bill also, and thereupon the court was powerless to render any judgment whatever in favor of the plaintiff, even if the parties did proceed to trial upon the cross-bill. Gray v. Ward, 234 Mo. 296; Hamlin v. Walker, 228 Mo. 611; Lanyon v. Chesney, 209 Mo. 9; Jones v. Moore, 42 Mo. 413; Maginn v. Schmick, 127 Mo. App. 411.

*David W. Hill* for respondent.

(1) Before the close of plaintiff's case the plaintiff dismissed his petition as to the appellant, thereby exercising a right to which he was clearly entitled and it was error in favor of the appellant for the court to try the case on the alleged cross-bill of the appellant. Sec. 650, R. S. 1899; Gray v. Ward, 234 Mo. 291; Hamlin v. Walker, 228 Mo. 611. (2) The court in trying the case on the cross-bill of the appellant, after the plaintiff had voluntarily dismissed the petition as to the appellant, committed error in favor of the appellant, but for such error the appellant cannot complain. In procuring a trial on the cross-bill the appellant obtained more rights than it was entitled to. R. S. 1909, sec. 2082.

WOODSON, P. J.—The plaintiff instituted this suit in the circuit court of Butler county against S. M. Chapman, Isaac Luke, the National Iron Mining Company, a corporation, J. P. Thomas, Adams T. Burns, Adam F. Burns and Addison F. Burns, *alias* Adam T. Burns, *alias* Adam F. Burns, under section 650, Revised Statutes 1899, now section 2535, Revised Stat-

utes 1909, to ascertain and determine the right, title and interest of the parties to the north half of the northwest quarter of section eleven, and the northwest quarter of the northwest quarter of section twelve, all in township twenty-six, range five, Butler county, Missouri.

Service was had upon all the defendants, and all except S. M. Chapman, Isaac Luke, J. P. Thomas and the National Iron Mining Company made default, and in due time judgment by default was rendered against them. The National Iron Mining Company and Isaac Luke filed their separate answer admitting that the former was a corporation and that they claimed to own the land in controversy, "in fee simple absolute." They also filed a cross-bill founded upon the same statutes and prayed the court to ascertain and determine the rights, title and interest of the parties to the same lands, describing them again.

The reply was a general denial.

The trial began January 24, 1908, and before the plaintiff closed his case, by leave of court, he dismissed the cause as to Isaac Luke and the National Iron Mining Company. The trial proceeded on the answer and cross-bill of Isaac Luke and the National Iron Mining Company, the answer of S. M. Chapman, and the replication of the plaintiff.

After seeing and hearing all the evidence introduced the court took the case under advisement until May 11, 1908, when the court found the issues for the plaintiff and against the defendants Isaac Luke, the National Iron Mining Company and S. M. Chapman, and rendered judgment accordingly in favor of the plaintiff and against all of the defendants.

After moving unsuccessfully for a new trial, the answering defendants and J. P. Thomas appealed the cause to this court.

The evidence introduced by the plaintiff was substantially as follows:

1st.   The default judgment before mentioned.

2d.   A certified copy of the original entry from the General Land Office of the United States, showing that Samuel Petersberger, on the 7th day of September, 1857, entered all the land in controversy, viz: The north-half of the northwest quarter of section eleven; and the northwest quarter of the northwest quarter of section twelve, in township twenty-six north, range five east, in Butler county, Missouri.

3d.   Patent from the United States of America to Samuel Petersberger, dated February, 10, 1896, and filed August 18, 1903, and recorded in Book 68, page 324, of the deed records of Butler county, Missouri, conveying all the land in suit.

4th.   Warranty deed from Samuel Petersberger to John Milroy, dated November 10, 1862, recorded January 7, 1873, in Book I, page 558, of the deed records of Butler county, Missouri, conveying the northwest quarter of the northwest quarter of section twelve, in suit.

5th.   Warranty deed from Samuel Petersberger and wife to Adams T. Burns, dated January 1, 1873, recorded August 30, 1873, in Book J, page 21, of the deed records of Butler county, Missouri, conveying the north half of the northwest quarter of section eleven, in suit.

6th.   Warranty deed from John Milroy and wife to Samuel Petersberger, dated October 29, 1872, recorded May 18, 1874, in Book J, page 257, of the deed records of Butler county, Missouri, conveying the northwest quarter of the northwest quarter of section twelve, in suit.

7th.   Warranty deed from Samuel Petersberger and wife to John J. Winton, dated February 6, 1873, recorded March 10, 1873, in Book I, page 425, of the deed records of Butler county, Missouri, conveying the northwest quarter of the northwest quarter of section twelve.

8th. Warranty deed from John J. Winton to Abner E. Leonard, dated October 12, 1872, recorded March 26, 1873, in Book I, page 462, of the deed records of Butler county, Missouri, conveying the northwest quarter of the northwest quarter of section twelve, in suit.

9th. Warranty deed from Abner E. Leonard to Adam F. Burns dated May 9, 1873, recorded May 20, 1873, in Book I, page 524, of the deed records of Butler county, Missouri, conveying the land in suit.

10th. Quitclaim deed from Addison F. Burns and wife to E. W. Graves, dated August 4, 1903, recorded August 11, 1903, in Book 63, page 220, of the deed records of Butler county, Missouri, conveying all the land in suit.

11th. Over the objection and exceptions of counsel for defendants, the plaintiff then read in evidence the deposition, direct examination, of Addison F. Burns, defendant, showing that Adams T. Burns and Adam F. Burns, mentioned in the foregoing deeds, are one and the same person, otherwise known as Addison F. Burns.

Counsel for plaintiff in his statement of the case in this court, quotes the following from the evidence introduced by the defendants, viz:

"Oral evidence introduced by said defendants Luke and National Iron Mining Company, developed the fact that Isaac Luke went on the lands in suit as a squatter; and that the other defendants, Chapman, Thomas and National Iron Mining Company, hold under the said Luke; and said testimony also developed the further fact that none of the defendants have any tifle by adverse possession, or by virtue of any statute of limitations."

(In order to properly understand this evidence it is necessary to state that the original bill of exceptions in this case was lost or destroyed, and that the one now on file is a substituted bill, which does not purport to

set out the evidence as introduced, but states the agreement of the parties as to what the evidence introduced at the trial showed.

The plaintiff then rested.

Thereupon counsel for the defendants Isaac Luke and the National Iron Mining Company introduced the following evidence, in support of their cross-bill, viz.:

(a)  Quitclaim deed from Samuel Petersberger of the county of .............. State of Missouri, party of the first part, to the defendant, Isaac Luke, dated November 2, 1900, recorded March 20, 1903, in Book 68, page 87, of the deed records of Butler county, Missouri; conveying all of the land in suit.

This deed was duly acknowleged before I. N. Pearce, a notary public of Butler county, Missouri, who certifies that the grantor therein was personally known to him to be the person described in and who executed the foregoing instrument.

(b)  Defendants further offered a general warranty deed from Isaac Luke and wife to the appellant, National Iron Mining Company, dated October 26, 1906, acknowledged on the 7th day of November, 1906, conveying all of the iron ore and all other minerals and mineral substances under the surface of all the land in controversy.

Said defendants, Luke and the National Iron Mining Company, also introduced in evidence a certified copy of the record of the conviction of Addison F. Burns for forgery. The record showed that Addison F. Burns had been convicted in Clarion county, Pennsylvania, and sentenced to imprisonment in the penitentiary for a term of seven years and six months, for forgery of a deed to certain land in Dent county, Missouri, and also for uttering and passing the same forged deed.

Defendants also offered in evidence the second deposition of Addison F. Burns, taken in the former suit of E. W. Graves, plaintiff, against Isaac Luke,

defendant. This deposition had been taken on the 3d day of February, 1905, more than two years before this suit was instituted. In this deposition, Addison F. Burns was examined by Mr. S. M. Chapman, as attorney for Isaac Luke. In said deposition, Addison F. Burns testified that he resided in the city of McDonald, Washington county, Pennsylvania; that his father was William Burns, and that he and his father had resided in McDonald, Pennsylvania, for about seven years; that during the years 1865 and 1866, his father lived close to the Clarion river; that in 1868 his father moved to Ripley county, Missouri; that in or about the year 1867, his father became bankrupt; witness stated that he was acquainted with the plaintiff, E. W. Graves, and had met him for the first time on the day before he gave his first deposition; that he could not state the section, township or county in which the land in controversy was located, without referring to the deed, which he thought designated the land properly, but was not positive as to the consideration; witness could not state the amount of land conveyed by the deed from Samuel Petersberger and wife to Adam F. Burns, nor the consideration paid therefor, without referring to the deed; witness believed that the consideration expressed in the deed was right, but he was not positive; his father had done all the business in reference to that transaction; witness was not present at the time the conveyance was made by Samuel Petersberger and his wife, but knew something of the transaction, being a partner with his father; witness knew nothing about the conveyance from Petersberger and wife to himself, other than what the deed discloses and what his father may have said to him about the transaction; witness never met Mr. Petersberger or his wife, either before or since the making of the deed; witness had no knowledge of what became of the deed, unless it was burned at the time his house burned, or his father might have mislaid it; witness could not tell without looking at

the deed, what land was included in the conveyance to Mr. Graves that he obtained from Abner E. Leonard; he could not state what consideration was paid to Mr. Leonard by him; he supposed the land was described correctly, but as to the consideration he was unable to state; witness had no recollection of meeting Abner E. Leonard, but may have met him; the only information witness had with reference to Abner E. Leonard was what his father told him, and the deed which was regularly executed; if such a man as Abner E. Leonard ever existed, witness did not know whether he is living or dead, and if dead witness had no knowledge of where or when he died; witness had no other information with reference to the title of the land in suit, other than what he obtained from the deeds and abstracts; witness stated that Mr. Graves, the plaintiff, had told him that the land was not worth over a dollar an acre; that he was putting it in with other lands for the purpose of making other sales; witness had no knowledge of the land being in the possession of Isaac Luke; witness further stated that all he knew of the record to which he had referred, or the alleged mistakes therein, was derived from the abstract which had been forwarded to him by attorney Hill.

Witness stated on cross-examination, that as far as he knew the deed from Samuel Petersberger and wife to Adam F. Burns, was expressly made for him; as far as he understood it, the land was conveyed to him; his best understanding was that the deed from Abner E. Leonard was intended for him; that the record would show until what time he had paid taxes; witness further stated that he always signed his name Addison F. Burns; that his pension comes under the name of Addison Burns, but since he was a boy he always signed his name Addison F. Burns in business transactions.

On re-direct examination, witness stated that he never knew that those mistakes were in the deeds, until

he received the abstract from attorney Hill; that he had no other source of information other than the abstract; witness further stated as follows: "I think Mr. Petersberger existed, but I do not know anything about it;" with reference to Abner E. Leonard, he could not state from his own personal knowledge, whether there was such a man in existence or not. He said he thought there was, he was not positive and couldn't say. He could not say who paid the taxes but he supposed the records would show. Further, on examination, the following question was asked him:

"Q. For aught you know personally then the persons named as grantees in your deed, Samuel Petersberger and Sarah E. Petersberger, his wife, also Abner E. Leonard, may have been mere straw persons without any potential existence—mere myths and fables?

"A. Those names were intended to represent somebody, I am certain of that, might be a mistake."

This was all of the testimony offered by the defendants, Isaac Luke and the appellant, National Iron Mining Company, on their cross-bill.

Thereupon, in opposition to said cross-bill, plaintiff again read in evidence all the evidence introduced in this case in chief. That was all of the evidence that was ever introduced by plaintiff against this appellant.

And this was all the evidence.

I. The National Iron Mining Company is the only defendant which has filed an abstract of the record and briefs, in this court, as is required by the rules hereof, and for that reason counsel for respondent asks that the judgment be affirmed as to the other appellants, which of course will be done; and hereafter, we will refer to the National Iron Mining Company as the appellant.

**No Abstract or Brief.**

The first proposition presented to us for determination is one of practice.

Before the close of the plaintiff's case, counsel for plaintiff dismissed the cause as to the defendants Isaac Luke and the National Iron Mining Company, and thereupon counsel for said defendants chose to proceed with the trial of the cause, upon their cross-bill, which was in all essentials the same as the petition filed by the plaintiff, and upon the reply, which was a general denial. In other words, in so far as these defendants were concerned, their cross-bill, in effect, was, as to them, under their election to proceed with the trial on the cross-bill, transformed into a petition, they becoming plaintiff and the plaintiff becoming defendant.

*Quieting Title: Dismissal by Plaintiff.*

After these defendants had introduced all their evidence and rested the case, counsel for plaintiff reintroduced in evidence, under the reply or general denial of the cross-bill, all the evidence it had theretofore introduced under the petition in chief, against the defaulting defendants, which was the same evidence that is set forth in the foregoing statement of the case.

After all the evidence was introduced on both sides, the court took the case under advisement, and thereafter on May 11, 1908, the court found the issues for the plaintiff, and rendered judgment accordingly for him, and against all of the defendants.

Upon this state of the record, counsel for appellant assigns as error the action of the court in proceeding with the trial on the cross-bill after the petition as to the defendants who filed it had been dismissed. The contention is, that the dismissal of the petition as to those defendants carried with it the cross-bill, and cite in support thereof, the case of Gray v. Ward, 234 Mo. 291. That case seems to sustain that contention, but the attention of the learned judge who wrote the opinion, was not called to the amendment of section 650, Revised Statutes 1899. That section was amended by the Legislature in 1909 (Laws 1909, p. 343, sec. 1.). As

amended it is now section 2535, Revised Statutes 1909, and what the court said in regard to the latter section was inaccurate.

After that amendment, it is perfectly clear that a dismissal of the petition would not dismiss the cross-bill. [State ex rel. Bernero v. McQuillin et al., 246 Mo. 517.] But in the case at bar, the plaintiff is not assisted by that amendment, for the reason that this suit was instituted long prior to the date of the amendment, and consequently is still governed by old section 650.

Counsel for respondent does not seem to controvert that proposition, but insists that appellant is in no position to take advantage of that error **Request for Trial.** for the reason that counsel for defendants invited, and in response to that invitation, the court permitted them to proceed with the trial upon their cross-bill and the plaintiff's reply. It is academic that this court will not hear a party litigant complain of an error committed by the trial court at the request of such party. The reasons supporting that rule have been so often and clearly stated in the numerous decisions of this court, that no good would flow from a restatement of them here.

Independent of that, the trial court had jurisdiction of the subject-matter of the action by virtue of the **Jurisdiction.** original action still pending against the other defendants, and when these defendants requested the court to retain jurisdiction of the cause as to them, notwithstanding the dismissal, and to proceed with the trial on their cross-bill, they thereby submitted themselves to the jurisdiction of the court, and the court thus having jurisdiction of both the subject-matter and all the parties to the cause, had unquestionably the jurisdiction and authority to try the same, and to render judgment therein. [State ex rel. Ponath v. Muench, 230 Mo. 236.] The action of these defendants in entering their appearance, cured the

error, that otherwise would have existed, had the court proceeded with the trial without such appearance.

We, therefore, rule this question of procedure against the defendants.

II.   Counsel for the appellant, National Iron Mining Company, assign many other errors, among which is that the trial "court erred in finding and adjudging plaintiff to be the owner of the land in controversy. No competent testimony of any kind whatever was offered by plaintiff to show that the grantor named in the deed dated August 4, 1903, Addison F. Burns, under which plaintiff claims, was the same person as either Adam F. Burns, the grantee named in the deed dated May 9, 1873, or Adam F. Burns, the grantee named in the deed dated January 1, 1873."

Concede for the argument's sake, without deciding it, that said assignment is well grounded, nevertheless, appellant is in no position to ask this court to reverse the judgment upon that ground for the reason that said appellant's own evidence shows that it had no right, title or interest whatever in or to said real estate.

*Judgment for Plaintiff: No Title in Either Party.*

In support of that statement, we quote the following from said defendant's evidence, as it appears on page fifty-one of their abstract of the record, viz.: "Oral evidence introduced by said defendants Luke and National Iron Mining Company developed the fact that Isaac Luke went on the land in suit as a squatter; and that the other defendants, Chapman, Thomas and National Iron Mining Company, hold under the said Luke; and said testimony also developed the further fact that none of the defendants have any title by adverse possession, or by virtue of any statute of limitations."

By reading this evidence it will be seen that the appellant, the National Iron Mining Company, has no

title whatever to the land in controversy, without it acquired the same by deed.

The only deeds appellant introduces in evidence are the two previously mentioned, one from Samuel Petersberger to Isaac Luke, dated November 2, 1900, and the other from Isaac Luke and wife to the National Iron Mining Company, dated October 26, 1906.

Conceding these two deeds to be genuine, of which there is grave doubt, it will nevertheless be seen that Samuel Petersberger and wife, by the deed previously mentioned, dated February 6, 1873, conveyed all their right, title and interest in and to said land to John J. Winton (through whom respondent claims) long prior to the date of the deed from said Petersberger to said Luke.

That being true, it is perfectly apparent that the National Iron Mining Company has no paper title to this land, and as previously shown, it has none by adverse possession.

Evidently, anticipating that this court would reach the conclusion just stated, counsel for appellant insists that the judgment should be reversed for the reason that it was in the possession of the land, and that said possession was of itself a good defense against the respondent, who has neither the title nor possession.

**Defendant in Possession.**

Upon the concession previously made as to the plaintiff's title and right to the judgment, there would be great force in this insistence of appellant, had the record disclosed the fact that it was in the possession of the land at the date of the institution of the suit, but after a careful examination of the record we have failed to find any evidence which shows appellant was ever in possession of any of the land in controversy. In fact, it only claims the minerals thereon, if any, of the existence of which there is no evidence whatever.

Before this court will reverse a judgment, it must

248 Mo—7

appear from the record that the party who asks for the reversal has some right, title or interest therein, which is adversely affected thereby, and as appellant has made no such showing here, the judgment should be affirmed.

It is so ordered. All concur.