LURA O. SCOTT, Respondent, v. MARY M. DAVIS, MARY MARSH, IRBY W. DAVIS and JOHN STERLING ROYAL REMEDY COMPANY, a Corporation, Appellants.

Kansas City Court of Appeals, January 28, 1918.

1. **CORPORATION: Expiration of Charter: Officers as Trustees.** Whenever the charter of a corporation expired by reason of the time mentioned in its article of incorporation having expired, the affairs of the company must be wound up as provided in section 2995, Revised Statutes 1909.

2. **———: Equity.** But where those in control of the company do not thus wind up its affairs, but proceed to organize a new company with the assets and business of the old one without notifying any of the parties interested of any of the facts, equity, under the facts disclosed in this case, will place the latter in the same position in the new company that they held in the old company whose charter had expired.

3. **EQUITY: Pleading: General Relief.** Where sufficient facts are stated in a petition in equity to entitle plaintiff to relief, the particular relief asked may be disregarded and any relief consistent with the case made by the petition and with the issues may be granted.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney,* Judge.

REVERSED AND REMANDED (*with directions*).

*H. F. Weiman* for appellants.

*John D. Meyers* for respondent.

BLAND, J.—In 1884 a corporation to continue twenty-five years and known as "The John Sterling Royal Remedy Company" was organized under the laws of Missouri to manufacture and sell medicines. The capital stock consisted of five hundred shares. The charter expired in 1909, but without any knowledge of such expiration on the part of any of the parties concerned in the transactions herein discussed the company continued to do business until October, 1914. On October 8, 1912, one James W. Oldham owned four hundred and sixteen (416) shares of said capital stock and one Mary Weil owned the remaining eighty-four (84) shares. On that date said Oldham by contract in writing (hereinafter called the Oldham contract) sold to said Mary Weil all of his capital stock in the company for the sum of six thousand dollars ($6000), of which sum said Mary Weil paid one thousand ($1000) dollars in cash and was to pay the balance in monthly installments. To secure the deferred payments all of the capital stock of the company was surrendered and canceled and new stock was issued in the name of Mary Weil, who endorsed the same in blank and turned the certificates over to said James W. Oldham. These shares at the time of the trial were in the possession of the plaintiff, who was the assignee of said Oldham.

By the terms of the Oldham contract it was provided that in case Mary Weil made default in the payment of any sum of money when the same became due under said contract, that the said James W. Oldham then might declare the contract and all further right, title and interest of said Mary Weil in and to said certificates of stock terminated, save and except as to eighty-four (84) shares thereof, and that the said Mary Weil and all persons acting under her should at once resign from all offices in the corporation and deliver said corporation and all of its assets over to said Oldham; that all money theretofore paid to Oldham should be retained by him as liquidated damages.

198 M. A.—33

Mary Weil, as provided by said contract, took possession of the corporation and of all its offices, assets and business, and the business of the corporation was thereafter carried on by her, and she, as long as she retained her interest, made the payments provided for in the contract as the same became due. In February, 1913, Mary Weil by a contract in writing sold to the defendant, Mary M. Davis, two-thirds of her interest in the company, and it was provided in said contract that the payments on the Oldham contract should be continued by said Mary Weil and Mary M. Davis. Shortly thereafter Mary Weil sold to Mary Marsh her remaining one-third of the stock and the latter sold this stock to Mary M. Davis. Mary M. Davis thereupon took possession of the corporation and its offices and assets, and the business was thereafter carried on by her and under her control until October 1, 1914, and up to that time all payments on the Oldham contract were met and paid by her.

In September, 1914, Mary M. Davis was notified by the Secretary of State that the charter of the company had expired. This was the first knowledge that any of these parties had of the expiration of the corporation. Thereupon the defendant, Mary M. Davis, failed to do anything toward having the corporation wound up as provided by section 2995, Revised Statutes 1909, but proceeded to form a new corporation without notifying any of the parties interested of any of the facts. The new company was organized under the name of the "John Sterling Royal Remedy Company" with a capital stock of five thousand ($5000) dollars divided into fifty shares; forty-eight (48) shares were issued to Mary M. Davis and one (1) share each to defendants, Irby W. Davis and Mary Marsh.

The property of the old company consisted of furniture, mailing lists, formulas, trade-marks, patents and the trade-name. The formulas and the trade-name had been in use for over twenty-five years. Although Mary M. Davis at the trial claimed that nothing but the trade-name was used in the new corporation, the

evidence, we think, shows that all of the assets of the old company were turned over by her to, and used by, the new company. Mary M. Davis at the trial testified that, in addition, real estate of the value of three thousand ($3000) dollars was also a part of the assets upon which the new company was incorporated. We think a fair consideration of the evidence shows that this real estate was not in good faith made a part of the assets of the new company, the property was reconveyed out of the company only a few days after the incorporation. After the formation of this new company, Mary M. Davis refused to make any further payments on the Oldham contract and on October 17, 1914, plaintiff, who was then the owner of said contract, served a written notice on her to the effect that the latter's rights in all of the shares in the old company, except eighty-four (84) shares, had terminated. But Mary M. Davis refused to turn over to plaintiff the company property. On October 23, 1914, plaintiff instituted this suit in equity, setting forth in her petition the facts of the transaction, claiming to be the absolute owner of four hundred and sixteen (416) shares of the stock of the old company; praying that the court award her forty-one and 6/10 (41.6) shares of the stock of the new corporation (which was the proportion of the total number of shares in the new company that James W. Oldham's four hundred and sixteen shares bore to the entire number of shares of the old company); that a temporary injunction be granted enjoining the defendant, Mary M. Davis, from in any manner disposing of her stock in the new company, and that the new company be enjoined from transferring any shares of stock on its books until the further order of the court and until the temporary injunction might be heard.

Upon a trial of the case the court rendered judgment that defendant, Mary M. Davis, should within ten days from the date of said judgment pay to the plaintiff forty-seven hundred ($4700) dollars, being the balance found to be due on the Oldham contract, or that she within said ten days, on behalf of herself and the John

Sterling Royal Remedy Company, transfer, by an instrument in writing, to plaintiff all of the rights and privileges "to use the trade-name, The John Sterling Royal Remedy Company, in the manufacture and sale of medicine under the copyright formula and trade-mark and trade- name, and the right to advertise and conduct business under such trade-name in the sale of such medicines and remedies," etc., "if such instrument be executed within said time then upon the execution thereof the said Mary M. Davis and John Sterling Royal Remedy Company, and the other defendants herein who hold under her, are hereby enjoined and prohibited from interfering thereafter with the full enjoyment of said rights and privileges, so granted to the said Lura O. Scott, and prohibited from causing John Sterling Royal Remedy Company interfering in any way therewith," etc. It was further provided in said decree that if the money should not be paid nor said instrument executed, that the defendants be prevented from in any way interfering with the plaintiff herein from setting up and establishing a business to continue the manufacture and sale of medicine under said copyright formula, etc., and that defendants be enjoined from using the corporate name, John Sterling Royal Remedy Company, in the sale of medicines or in its business. From this decree defendants have appealed.

It seems that at a prior term of court this cause was dismissed for want of prosecution without the knowledge of either party, but without knowing this fact both parties appeared at the trial and voluntarily submitted the pleadings, issues and evidence to the court and said judgment and decree was rendered thereon. While there can be but one final judgment in a cause and when the cause is dismissed at a previous term of court and no further order is made concerning the same at that term, after the adjournment of such term the court has lost jurisdiction of the cause and is powerless to reinstate it, nevertheless, the cause may be reinstated by the voluntary appearance and consent of the parties, although at a subsequent term. [Brew-

ing Co. v. Hogg, 141 Mo. App. 391.] As the parties in this case voluntarily appeared and submitted the cause to the court on the theory that no prior judgment had been rendered therein dismissing the case, we think that defendants are not now in a position to complain. As was said in Gate City National Bank v. Strother, 196 S. W. 447, "The appellants appeared thereafter, and without objection based on the point now urged, litigated their case and had all the opportunity for defense they chose to employ." Under the circumstances we believe defendants consented to the reinstatement and trial of this case.

Defendants contend that as the corporation expired in 1909 all acts of the corporation thereafter were absolutely void, and the title to the property was by statute (section 2995, Revised Statutes 1909) devolved upon trustees for the settlement of its affairs and the distribution of its assets. That the issuance of the new shares at the time of the execution of the Oldham contract was void. That the contract between Mary Weil and Mary M. Davis was likewise void, for the reason that when defendant, Mary M. Davis, purchased these shares from said Mary Weil it was the understanding of the parties that they were transferring valid shares in a live corporation and as it proved that such was not the case, that the contract was void and that the defendant, Mary M. Davis, was relieved from further payments thereunder, and that plaintiff, the assignee of Oldham, had no rights under such void contract, and that she now has none.

While it may be conceded that defendant, Mary M. Davis, upon a discovery that there was no valid corporation or shares of stock in existence, was relieved from further payments under the Oldham and the Weil-Davis contracts, nevertheless, this did not permit her to convert to her own use the assets of the company and form a new corporation with the same, and thereafter to refuse to continue her payments on the Oldham contract. The assets of the corporation belonged to the stockholders, it appearing that there were no cred-

itors, and when Mary M. Davis, who was in complete possession and control of the old company found out the true facts concerning its status as a corporation, it was her duty to call in all the interested parties and either adjust the various interests by re-incorporating the company and re-establishing the Oldham contract in reference to the new company, or adjust the situation in some other manner, or repudiate the Oldham contract altogether, demand the return of the money that would be due and turn the company and assets over to plaintiff to be by her disposed of as provided by section 2995, Revised Statutes 1909. But instead of doing any of these she wrongfully sought to deprive this plaintiff of her rights in the assets of the old company. As Mary M. Davis elected to retain the assets, in which she had no interest except that given her by the Oldham and the Weil-Davis contracts and the sale of the Marsh stock to her subject to those contracts, she must in equity and good conscience be deemed to have waived the lack of incorporation of the old company, and the rights of the parties now should be determined, as near as possible, under the terms of the Oldham contract. And in determining the rights of the parties the shares of stock held in pledge by Oldham and his assignee should be taken as representing the assets of the company, and while the shares themselves were void, as all powers of the corporation had terminated in 1909 (Bradley v. Reppell, 133 Mo. 545; State ex rel. v. Hannibal, etc., Rd. Co., 138 Mo. 332; State ex rel. v. Cape Girardeau, etc. Co., 207 Mo. 85), the pledging of the same to Oldham amounted to a pledge of the assets of the company itself (7 R. C. L., Sec. 145). Under these circumstances Oldham or the plaintiff, his assignee, had a right to pursue these assets to the new company as they constituted the only assets of such company, and the interests of no third party intervened. And when these assets were found to be in the new company plaintiff had a right to be restored in the new company to the rights she lost in the assets of the old company by Mary M. Davis' wrongful conduct.

Defendants attack the petition because they say that it counts upon an alleged cause of action wherein plaintiff asks that she be given the same rights in the new company as the shares of stock pledged to her gave her in the old; that in her petition she states that there has been in effect a foreclosure of the pledge, which has resulted in full ownership by plaintiff of four hundred and sixteen (416) shares of stock so pledged, without any right of redemption on the part of the defendants; that plaintiff has received seventeen hundred ($1700) dollars or more money under the Oldham contract but does not offer to restore the money which has been actually paid upon said stock; that the petition fails to state a cause of action in equity by reason of the maxim "that he who seeks equity must do equity." It would seem that in equity cases no tender is necessary. [See Whelan v. Reilly, 61 Mo. 565.]

However, it will be noted that the court did not grant the relief requested by plaintiff but under plaintiff's prayer for general equitable relief granted other relief. If sufficient facts are stated in the petition to entitle her to relief, the particular relief asked may be disregarded and the court may grant any relief consistent with the case made by the petition and with the issues. [Holland v. Anderson, 38 Mo. 55; Sharkey v. McDermott, 91 Mo. 647.]

However, we do not believe that the court should have decreed that defendants be required, on condition, to turn over all the assets of the company to plaintiff. While the Oldham contract provided that in case the payments were not made all the assets should be turned over to Oldham (or plaintiff, his assignee) free from the interference of Mary M. Davis, nevertheless, that contract did not contemplate that Mary M. Davis have no further interest in the company, as it was provided that she should still have eighty-four (84) shares out of the total of five hundred (500) shares of the old company. We think, then, that the decree should be modified so as to provide in effect that Mary M. Davis reinstate the Oldham contract in reference to the shares

of stock in the new company and that she be required to execute a new contract in writing, and in form to be approved by the court, pledging all of the stock in the new company to plaintiff for the unpaid balance due on the Oldham contract (after paying in cash all payments in arrears); Mary M. Davis to have back eight and 4/10 (8.4) shares in case she make default in such new contract. The new contract to be in terms the same as the Oldham contract so far as the changed conditions will permit. If Mary M. Davis refuses to do as indicated then she shall be ordered to pay to plaintiff the unpaid balance on the Oldham contract, to be arrived at by the court; and should she refuse to make such payment then a receiver shall be appointed to take charge of all the assets, tangible and intangible, of John Sterling Royal Remedy Company, who shall sell them under order of the court, and of the proceeds 416/500 shall be paid to plaintiff and 84/500 paid to Mary M. Davis, and that, thereafter, defendants be enjoined from using the name, John Sterling Royal Remedy Company, or a name substantially the same, in the manufacture or sale of medicines or in their business. All costs of this case shall be paid by defendant, Mary M. Davis.

The judgment is reversed and the cause remanded with directions to the lower court to proceed as directed. All concur.