# WILLIAM N. BARRON v. WRIGHT-DALTON-BELL-ANCHOR STORE COMPANY et al.; WRIGHT-DALTON-BELL ANCHOR STORE COMPANY, Appellant.

### Division Two, February 18, 1922.

1. **JURISDICTION: Dismissal: Inadvertence: Estoppel.** In June, 1917, plaintiff filed a petition which in the first count was a suit to quiet title, and in the second an action in ejectment, and the record proper shows that in October he dismissed the case and judgment for costs was rendered against him. In the following February he voluntarily dismissed the count in ejectment. In July, 1917, defendant filed its answer to the first count, and thereafter the cause was continued a number of times during the years 1918 and 1919. In January, 1920, plaintiff filed an amended reply, to which defendant filed a demurrer, which was overruled, and the trial was commended, and appellant proceeded on the theory that his first count was still pending, and without objection introduced his testimony, and defendant offered its testimony on the same theory. The motion for a new trial says nothing about the dismissal of the case, nor does it appear that the trial judge had any notice that the case had been dismissed, and it appears that neither plaintiff nor defendant knew that the record showed a dismissal. *Held*, that, as defendant appeared and litigated the first count, it is too late to raise the question of jurisdiction for the first time on appeal, and defendant is in no position to complain that the trial court disposed of the case as though the first count had never been dismissed.

2. **QUIETING TITLE: Affirmative Defense: Dismissal by Plaintiff.** Where plaintiff brings suit to quiet title, and defendant in his answer claims title to the land and asks the court to ascertain and determine the title as between him and plaintiff, and plaintiff files reply denying the validity of defendant's title, a dismissal by plaintiff is ineffectual, but the case is still triable under the answer and the reply.

3. ———: **Departure: Recovery Under Reply: Affirmative Defense.** Where the evidence, in the suit to quiet title, shows that plaintiff made a prima-facie case in chief under his petition and the defendant's answer, it will not be held that he recovered under the allegations of his reply and that he therefore departed from

the allegations of the petition. And where defendant in his answer asserted ownership, and asked the court to determine the title as between him and plaintiff, and, after plaintiff has closed his case in chief, offers evidence in support of his averments, and plaintiff then, in rebuttal, under the issues presented in his reply, offers evidence tending to show that defendant's title to said real estate is invalid, the plaintiff does not take a departure in his reply.

4. ———: ———: **By Reply: Affirmative Defense.** Under the statute (Sec. 1970, R. S. 1919) title may be determined under either the petition or answer, and if the answer contains a general denial and asserts ownership in defendant and asks the court to determine the title as between him and plaintiff, a reply which meets the issue tendered by the answer is not a departure.

5. ———: **At Law or In Equity: Equitable Estoppel.** Where plaintiff in his action to quiet title relies upon his legal title, and defendant in his answer asserts that he is the legal owner, and plaintiff in his reply pleads matters by way of equitable estoppel which if sustained will preclude defendant from claiming the land under his deed, the case should be disposed of as one in equity, and on appeal the evidence and merits of the case will be considered.

6. **EQUITABLE ESTOPPEL: Conveyance: Subsequent Lease: Claim Under Lease: Election.** Where the owner of a lot conveyed it to defendant by a recorded deed, and subsequently by a recorded lease leased to defendant for a long term of years an unimproved part of said lot, and thereafter defendant continued to pay rent to said lessor and took no steps to have said lease corrected, although defendant knew that his deed embraced said portion of the lot, and before the expiration of said lease the lessor and owner conveyed the said part of the lot to plaintiff, who bought in reliance upon the recitals of the recorded lease and the payment of rents, the defendant, by electing to claim under the lease, is estopped to assert title against plaintiff to said portion of the lot.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,* Judge.

Affirmed.

*Sam M. Phillips, E. R. Lentz* and *Ed. L. Abington* for appellant.

(1)   When the plaintiff dismissed his alleged cause of action and the court rendered judgment against plaintiff for costs, that was a final determination of the cause, and the court had no jurisdiction to render any further or other judgment in the said cause. R. S. 1919, secs. 1410, 1528; Standard Enc. of Procedure, 978, 986; Weithopt v. St. Louis, 158 Mo. 659; Lee v. Kaiser, 80 Mo. 431; State ex rel. Cass County v. Mo. Pac. Ry. Co., 149 Mo. 104; Waterworks Co. v. School Dist., 23 Mo. App. 234. (2) Plaintiff in this case must recover, if at all, on the allegations of his petition and not on the allegations in his replication. Nor can the allegations in the replication in any manner aid the petition. In this case the estoppel not being plead in the petition is not pleaded at all. The petition alleges that the plaintiff is the owner in fee simple of the land in controversy. The replication practically concedes that he is not the owner in fee simple, but alleges that the defendant is estopped to assert its superior title. This is a clear departure from the petition and is an attempt to plead an entirely different cause of action. Matheson v. Ry. Co., 118 S. W. 12; Rhodes v. Land & Lumber Co., 105 Mo. App. 279; Milliken v. Comm. Co., 202 Mo. 654; Hill v. Rich Hill Coal Co., 119 Mo. 9. (3) To constitute estoppel *in pais* five things must concur as essential elements of estoppel: (a) There must be a false representation or an unlawful concealment of material facts; (b) the representation must have been made with the knowledge of the facts; (c) the party to whom the representations were made must have been without a knowledge of the facts, and without any convenient and available means of acquiring such knowledge; (d) the representations must have been made with the intention that the other party would act upon it; and (e) he must have acted on it to his detriment. In the instant case it devolved upon the plaintiff to allege and prove all of these essential elements. If he fails to allege and prove any one of these essential elements his whole defense of estoppel fails. Tiedeman on Real Property, sec. 725; Bigelow on Estoppel (3 Ed.), p. 484; 16 Cyc. 726-7; 5 Elliott on

Contracts, sec. 4938, note 79; 8 Standard Ency. Procedure, p. 697; Blodgett v. Perry, 97 Mo. 263; Shield v. McClure, 75 Mo. App. 631; Brummell v. Adams, 146 Mo. 70; Bales v. Perry, 51 Mo. 631; Gallagher v. Northrup, 74 N. E. 711. (4) Estoppel must be pleaded, and the pleading must allege the facts relied upon with certainty, precision and particularity, no intendments being indulged. The pleading must contain all the elements of estoppel. Grooms v. Morrison, 249 Mo. 544; Thompson v. Lindsay, 242 Mo. 53; Casler v. Gray, 159 Mo. 508; Chance v. Jennings, 159 Mo. 544; Sanders v. Chartrand, 158 Mo. 352; Avery v. Ry. Co., 113 Mo. 561. (5) Mere silence, or some act done, will not estop a party where the means of knowledge are equally open to both parties. Especially is that true where, as in this case, the party invoking the estoppel had constructive notice of the deed to defendant, had the means ready at hand to ascertain the fact and neglected to avail himself of the means at hand. Blodgett v. Perry, 97 Mo. 273; Bader v. Milling Co., 134 Mo. App. 145; Bales v. Perry, 51 Mo. 449; Harrison v. McReynolds, 183 Mo. 533. (6) In addition to notice to plaintiff by the record of the deed from Kramer to defendant, the defendant was in possession of the property in question at the time defendant took his deed from defendant's grantor, under its recorded deed and also under a lease from the same grantor, which inadvertently overlapped and included the land in controversy, which lease had not yet expired. It had the absolute right of possession under either the deed or the lease. This possession was notice to plaintiff and to all the world of every claim which the defendant had or could make to said property. An inquiry of the defendant would have elicited these facts. Plaintiff made no inquiry, this failure to make inquiry constituted gross negligence on his part and precludes him from asserting estoppel. Wiggenhorn v. Daniels, 50 S. W. 808; Ins. Co. v. Smith, 116 Mo. 261. (7) The doctrine of estoppel *in pais* always presupposes fraud on one side and error upon the other. The element of fraud is essential either in the in-

tention of the party estopped, or in the effect of the evidence set up. In order to work estoppel there must be some intended deception in conduct or declaration or such gross negligence as to amount to constructive fraud. Spahr v. Cape, 122 S. W. 384; 2 Herman on Estoppel, sec. 944; Tennant v. Ins. Co., 133 Mo. App. 361; Bales v. Perry, 51 Mo. 449; Austin v. Loring, 63 Mo. 19; Newton v. Rebnach, 90 Mo. App. 650; Crary v. Dye, 210 U. S. 515. (8) Plaintiff claims under a second deed from defendant's grantor. Defendant's deed contained an express covenant of general warranty as well as the statutory covenant implied from the use of the words grant, bargain and sell. She was thereby estopped from asserting any title or claim to the land, thus conveyed, in derogation of the title conveyed by her own deed. Barron is in no better position, for he is her grantee in a subsequent deed; he stands in privity with her, he is estopped from alleging anything in derogation of said deed in the same manner and to the same extent as his grantor would have been. Tiedeman on Real Property, secs. 727, 731; 16 Cyc. 686B; Steele v. Culver, 158 Mo. 136; Johnson v. Johnson, 170 Mo. 34; Broadwell v. Merritt, 87 Mo. 95; Orchard v. Store Co., 264 Mo. 554. (9) Barron cannot successfully assert that defendant is estopped from claiming the piece of land in controversy, because defendant accepted a lease of said land from Mrs. Kramer prior to Barron's purchase, for the reason that Barron was not a party to the said lease, therefore he is not in a position, being a stranger to the lease, to assert that it estops defendant in its claim of ownership to the land in suit. Cottle v. Sydnor, 10 Mo. 473; Glasgow v. Lindell, 50 Mo. 60; Glasgow v. Baker, 72 Mo. 441; Lovelace v. Carpenter, 115 N. C. 424; Gaffney v. Clark, 115 S. W. 330; State v. King, 64 W. Va. 610; State v. King, 64 W. Va. 546; 9 C. J. p. 239.

*J. F. Woody* and *Arnot L. Sheppard* for respondent.

(1) Where after dismissal of the cause parties voluntarily appear and without objection on that ground,

try their case and have all of the opportunities for defense they choose to employ, they cannot afterwards, when defeated, be heard to say that the court lost jurisdiction to determine the controversy. Scott v. Davis, 200 S. W. 725; Gate City Bank v. Strother, 196 S. W. 447. In appellant's answer it asked the court for affirmative relief, viz., that the title to the land in its answer be quieted in it. Therefore, even though respondent had attempted to dismiss his cause of action the court would not thereby have been divested of jurisdiction to proceed to judgment upon the answer which in all essentials then became the petition in the case, and was sufficient upon which to base the decree rendered. Graves v. Chapman, 248 Mo. 83; Adams v. Cary, 226 S. W. 834. (2) This plea of estoppel was set up to defeat appellant's claim of title. Allen v. Sales, 56 Mo. 36; Suddath v. Roberts, 118 Mo. 295. Estoppel may be used in rebuttal without being pleaded where the proof thereof is admitted without objection, or where it is shown by appellant's proof. 16 Cyc. 809; 21 C. J. 1245 et seq., Ess v. Griffith, 139 Mo. 322; McDonnell v. Bank, 175 Mo. 275; McClure v. Bank, 263 Mo. 128; Brown Const. Co. v. McArthur Bros., 236 Mo. 50. (3) Respondent relies upon more than one ground of estoppel in this action. Appellant in its brief discusses only estoppel *in pais.* (a) Appellant is now estopped to claim title to the land in controversy by reason of the proceedings in the case of Wright-Dalton-Bell-Anchor Store Company v. Barron, wherein it sought to recover from the defendant therein, respondent here, the value of a so-called building, part of which was on the land in controversy, basing its right to recover on the fact that respondent owned such land. The fact that appellant in that proceeding took the position that respondent was the owner of such land will now estop it from taking a conflicting position to the latter's prejudice. Wilson v. McDaniel, 190 S. W. 3; Mayes v. Cunningham, 204 S. W. 404; Cashion v. Gargus, 267 Mo. 68; Bowman v. Anderson, 268 Mo. 1; Wadlow v. School Dist., 212 S. W. 904; Auction Co. v. Shore, 179 S. W. 769; Mining

Co. v. Guthrie, 189 Mo. App. 108; Columbia Brew. Co. v. Miller, 124 Mo. App. 384; Cooney v. Laird, 153 Mo. 435; McClure v. Clement, 161 Mo. App. 23; Reiger v. Faber, 116 Mo. App. 123; Benseick v. Cook, 110 Mo. 173; Lilly.v. Menke, 143 Mo. 137; State v. O'Neill, 151 Mo. 67. Admissions contained in pleadings may be used against the party in another suit; and this, wholly regardless of the question whether or not the person himself was in fact cognizant of the pleadings. The act of the attorney in such case will be held to be the act of the party. Dowzelot v. Hawlings, 58 Mo. 75; Warfield v. Lindell, 30 Mo. 287; Schad v. Sharp, 95 Mo. 573; Turner v. Baker, 64 Mo. 245; Sanford v. Railroad, 40 Mo. App. 27; Bowman v. Heating Co., 80 Mo. App. 636; Kirkpatrick v. Railroad, 211 Mo. 68; St. Louis v. U. Rys. 263 Mo. 436; Boothe v. Cheek, 253 Mo. 128. (b) Appellant procured a deed to the land in controversy in 1895; leased the same land in 1901 from the grantor in said deed; placed said lease on record; went into possession thereunder; paid rent on such premises each month to respondent and his grantor, for more than seventeen years; its officers, agents and counsel in the presence and hearing of respondent stated both in testimony and argument in the numerous. trials of the case of Orchard v. Store Co., which involved some of the issues here presented, that it held possession of said land under said lease as the tenant of respondent's grantor. In purchasing the property respondent relied upon the disclosures of the record of the lease and the declarations of appellant concerning the same and its possession thereunder. Such acts and conduct estop it to claim the property now. · 24 Cyc. 934, 937, 941; Helms v. Steward, 26 Mo. 529; Fontaine v. Lumber Co., 109 Mo. 55; Silver v. Summer, 61 Mo. 253; Morrison v. Bassett, 2 N. W. 851; · Morgan City v. Dalton, 30 So. 208; Russell Sage v. Lars, 75 N. W. 229; Barkman v. Barkman, 107 Ill. App. 332; Alexander v. Gibbons, 24 S. E. 748; Barker v. Nall, 59 Mo. 265; Longworth v. Aslin, 106 Mo. 155; Gordon v. Gordon, 224 S. W. 716. Where through such a course of dealing extending over

a number of years, appellant, with knowledge of all of the facts, recognized respondent and his grantor as the owners of the land in controversy, it cannot now assume a position inconsistent therewith, after respondent has changed his position with reference to the property. Sanguinett v. Webster, 153 Mo. 371; State ex rel. v. Dorton, 145 Mo. 305; Freely v. Bank, 103 Mo. 222; Zuendt v. Doerner, 101 Mo. App. 528; McFarland v. McFarland, 211 S. W. 23. Where appellant with actual or constructive knowledge of the facts, induced respondent by its words or conduct, or both, to believe that it acquiesced in or ratified Mrs. Dunky's claim of title to this land, subsequent to the deed of 1895; or that it would offer no opposition thereto; and respondent in reliance on such acts and conduct, purchased the land from Mrs. Dunky, then appellant is estopped to assert title thereto. 21 C. J. 1216, sec. 221; Ry. Co. v. Frowein, 163 Mo. 1; Alleman v. Manning, 44 Mo. App. 4; Carmine v. Brown, 104 Md. 204; Eareckson v. Rogers, 75 Atl. 513. (4) Respondent's grantor, subsequent to her deed of 1895, went into possession of and held the land under claim of ownership, adversely to appellant, receiving rent therefor month by month for seventeen years, much longer than the statutory period; the title revested in her by limitations, notwithstanding her prior deed and the covenants of warranty therein. 16 Cyc. 697; 21 C. J. 1086, sec. 65; Garabaldi v. Shattuck, 11 Pac. 778; Horback v. Boyd, 89 N. W. 644; Gardner v. Wright, 91 Pac. 286; Hearn v. Smith, 15 S. W. 240; Dillard v. Cochran, 153 S. W. 662; Robinson v. Reynolds, 176 S. W. 3. The possession of the appellant, the lessee, was the possession of the respondent as grantee of the lessor. Hence appellant lost by limitation whatever title it had. R. S. 1919, sec. 1305; South's Admr. v. Marcum, 22 S. W. 884; Upchurch v. Sutton Bros., 134 S. W. 477; Key v. Jennings, 66 Mo. 367; Allen v. Mansfield, 108 Mo. 343; Dausch v. Crane, 109 Mo. 323.

RAILEY, C.—This action was commenced in the Circuit Court of Butler County, Missouri, on June 1, 1917, in two counts. The second count was in ejectment and was voluntarily dismissed by plaintiff before the trial. The first count is under Section 2535, Revised Statutes 1909 (Sec. 1970, R. S. 1919), to ascertain and determine title to the following described real estate, lying in the east half of lot 51 of the original town of Poplar Bluff, in the County of Butler and State of Missouri, to-wit: A plot or parcel of ground in the east half of said lot 51, fronting on the west side of Main Street, in said city, and more particularly described as follows: Beginning on the east line of said lot 51, at a point one foot north of the southeast corner thereof; running thence north along and with the west line of Main Street, thirty-four feet to the southeast corner of the structure know as the Orchard Building; running thence westwardly and parallel with the south line of Poplar Street, 104 feet to the west line of the east half of said lot 51; running thence southwardly along and with said west line of said east half of lot 51, to a point on said line distant one foot north of the south line of said lot 51, and running thence eastwardly, and parallel with said Poplar Street, 104 feet, to the place of beginning.

Plaintiff alleges in said first count that he is the owner in fee of the land above described; that defendants claim some interest in said property, the nature and character of which claim is to plaintiff unknown, and cannot be described herein, except, that said claim is adverse and prejudicial to plaintiff. Said count concludes as follows:

"Wherefore, plaintiff prays the court to try, ascertain and determine the estate, title and interest of the parties, respectively, and to define and adjudge by its judgment or decree, the title, estate and interest of the parties severally in and to such real property, and to finally determine any and all rights, claims, interests, liens and demands whatsoever of the parties concerning or affecting said property."

The answer of defendants to first count of said petition reads as follows:

"Now come the defendants in the above entitled cause, and for answer to the first count of plaintiff's petition, deny each and every allegation thereof, except such as are hereafter specifically admitted or specifically denied.

"Defendant, Wright-Dalton-Bell-Anchor Store Company, further answering, states that it is and all the times hereinafter was, the owner in fee simple of the following portion of the land described in plaintiff's petition, to-wit:

"Commencing at a point on the north boundary line of the tract of land described in plaintiff's petition ninety-five and one-half (95½) feet west of Main Street; running thence westwardly along the north boundary line of said tract eight and one-half (8½) feet to a point one hundred and four (104) feet west from the west line of Main Street; thence southerly along the west boundary line of the tract described in plaintiff's petition thirty feet, to a point; thence eastwardly parallel with the north boundary line of the tract of land described in plaintiff's petition eight and one-half (8½) feet to a point; thence northwardly parallel with the western boundary line of said tract described in plaintiff's petition thirty feet, to a point on the north boundary of the tract of land described in plaintiff's petition, said point being the place of beginning.

"Defendant, Wright-Dalton-Bell-Anchor Store Company, further answering, says that it is in possession of all the property described in plaintiff's petition as his tenant under and by virtue of a certain lease, entered into on the first day of June, 1901, by and between Mrs. W. D. Knight, the then owner of the said land as lessor and this defendant as lessee, in which said lease plaintiff is assignee of the lessor, Mrs. Knight, whereby the lessor in the said lease leased the premises described in plaintiff's petition to the defendant for a monthly rental of forty dollars, payable monthly in advance on the first

day of each and every month, during the term of the said lease, and the further payment as rent of all state, county and municipal taxes, whether general or special, including special assessments that might be assessed against the premises during the term of the lease, and which said lease will expire at the end of the term of sixteen years, nine months and eight days from the first day of June, 1901. A copy of which said lease is herewith filed, marked 'Exhibit A' and asked to be taken and considered as a part of this answer.

"Defendant, Wright-Dalton-Bell-Anchor Store Company, further answering, says that through inadvertence in the describing of the property in said lease, it described the tract of land hereinabove described by metes and bounds, which at the time was, as hereinabove stated, the property of the defendant. Defendant further says that it has in all things well and truly kept and performed each, every and all of the obligations devolving upon it to be kept and performed by the terms of said lease and as a result thereof is entitled to the use and occupancy of the premises set out in plaintiff's petition, as a tenant of plaintiff until the 8th day of March, 1918; and that thereafter defendant is entitled, as owner, to the possession of the tract of land hereinabove described as absolute owner thereof.

"Wherefore, the premises considered, defendant prays the court to try, ascertain and determine the estate, title and interest of the plaintiff and defendant, respectively, in and to the premises described in plaintiff's petition and in this answer."

Said answer further avers that the defendant Hart-O'Neal Dry Goods Company is a tenant of its co-defendant, Wright-Dalton-Bell-Anchor Store Company.

On January 27, 1920, plaintiff filed an amended reply to defendants' answer, and admitted therein that said appellant has been in possession of the property described in the petition, as the tenant of plaintiff and his grantor, Mollie Knight, now Mollie Dunkey, since June 1, 1901, but denies that said tenancy of said appellant

has not been terminated. The reply further denies each and every allegation contained in said answer.

For further reply, plaintiff alleges that on June 1, 1901, appellant leased the lands described in the petition, from said Mollie Knight, now Mollie Dunkey, by written lease of said date, duly acknowledged and recorded in the land records of Butler County aforesaid, in book 59, at page 178; that appellant, on said June 1, 1901, went into possession of said premises as tenant of Mollie Knight, now Mollie Dunkey, under said lease, and so remained in possession thereof until March 8, 1918. The reply further alleges that plaintiff, relying upon the representations made by said appellant, by its conduct, in becoming the tenant of Mollie Knight, now Mollie Dunkey, and by causing and permitting said lease to be placed of record aforesaid, and believing said representations to be true, and believing said Mollie Dunkey to be the owner of said premises, he purchased the same from her; that appellant, by taking said lease to said premises and recording the same, and by occupying said premises as the tenant of said Mollie Knight, now Mollie Dunkey, is estopped from claiming said real estate or any part thereof, or from denying plaintiff's title thereto.

Plaintiff, further replying, denies that the description of the land in said lease is erroneous, and alleges that any rights of defendant to reform said instrument, if it had any, are barred by the Statute of Limitations, etc.

The reply further alleges that in July, 1917, said appellant sued plaintiff in the Circuit Court of Butler County aforesaid, for the value of all the structures and improvements placed by it on the premises described in said lease of June 1, 1901, namely, the following described part of lot 52, in the original town, now city, of Poplar Bluff aforesaid, beginning at a point on the west line of Main Street 82 feet north from the southeast corner of said lot 52, running thence north along the west line of Main Street 57 feet, to the southeast corner of the brick building commonly known as the Orchard Building;

thence west 104 feet, thence south 57 feet, thence east 104 feet to the place of beginning; that the property so described in the said lease includes the property claimed by it in its answer.

The reply further alleges that in defendant's suit against plaintiff, heretofore mentioned, it claimed the right to recover from plaintiff, the value of said buildings and improvements, by virtue of the lease aforesaid dated June 1, 1901, because, as defendant alleged and proved, that Mrs. W. D. Knight, the lessor, sold and conveyed to plaintiff the land described in the petition and answer. It is further averred in the reply that the above suit of defendant against this plaintiff was tried at the January term, 1920, of the Butler Circuit Court, and, at said trial, defendant alleged and proved that plaintiff herein is the owner of the land in controversy. Said reply concludes as follows:

"Wherefore, plaintiff says that in equity and good conscience the defendant is estopped from now asserting that the tract of land under said improvements, eight and one-half by thirty feet in area, in defendant's answer herein claimed by it, is not the property of the plaintiff herein, and from asserting any interest therein."

"Wherefore, having fully replied to defendant's answer, plaintiff again prays judgment, in accordance with his prayer in his petition."

On April 29, 1920, the trial court found the issues in favor of plaintiff, and declared by its judgment and decree that he was the absolute owner in fee simple of the real estate in controversy and described in the petition.

In order to prevent repetition, the evidence and such other matters as may be deemed necessary, will be considered in the opinion.

Said defendant, Wright-Dalton-Bell-Anchor Store Company, in due time filed its motion for a new trial, which was overruled, and the cause duly appealed by it to this court.

I.   In the abstract, as a part of the record proper, it appears, that on October 8, 1917, plaintiff dismissed his case in the Circuit Court of Butler County, Missouri, and judgment was rendered against him for the costs.

Dismissal: Estoppel.   Thereafter, on February 6, 1918, the record proper recites, the plaintiff voluntarily dismissed the ejectment count of his petition. Appellant contends that, as a final judgment of dismissal was entered against plaintiff, it terminated his case, and the trial court was thereafter without jurisdiction to determine the issue involved in plaintiff's petition.

The answer of appellant, heretofore set out, was filed on July 2, 1917, and was not disposed of by the dismissal of plaintiff's case.

Aside from the above, there is nothing to indicate who caused the entry of dismissal to be made. Both respondent and appellant appear to have been ignorant of the record entry, supra, dismissing the case, as the cause was continued a number of times by consent, during the years 1918 and 1919.   On January 27, 1920, respondent filed herein, the amended reply, heretofore set out. Appellant filed a demurrer to said reply, which was overruled.

On January 28, 1920, the trial was commenced before the court without a jury.   The respondent proceeded on the theory, that his cause of action was still pending, and, without objection, offered his testimony in chief.   Appellant, thereupon, offered its testimony, and respondent put in his evidence in rebuttal.   The court took the case under advisement until April 29, 1920, and entered a judgment in favor of respondent.   Appellant, in due time, filed its motion for a new trial, which was overruled.

The motion for a new trial is absolutely silent as to the dismissal of plaintiff's case, nor does it appear from the record, that the trial judge had any notice of said dismissal during the trial of the cause in the circuit court. Plaintiff contends that, as appellant voluntarily appeared and litigated the case as though respondent's action was still pending, it is too late now to raise the question of

jurisdiction, etc., for the first time in this court. In support of this contention, we are cited to Scott v. Davis, 198 Mo. App. 512, 200 S. W. 723, 725, and Gate City National Bank v. Strother, 196 S. W. 1. c. 447.

We are of the opinion, that by reason of the foregoing, appellant is in no position to complain of the trial court's action in disposing of the case, as though the first count of plaintiff's petition had never been dismissed.

II.   Aside from what is said in the preceding proposition appellant, in its answer, heretofore set out, claimed title to the land in controversy, and asked the court to determine, as between it and plaintiff, who was the owner of said real estate. The reply put Dismissal: in issue the allegations of the answer, and Affirmative Defense. pleaded other matters therein, as heretofore shown. Regardless, therefore, of the original dismissal of plaintiff's case, the action was properly tried under the answer and reply aforesaid. [Sec. 1970, R. S. 1919 (Sec. 2535, R. S. 1909); State ex rel. v. McQuillin, 246 Mo. 517, 152 S. W. 347; Craig v. Bright, 213 S. W. (Mo.) 845; Adams v. Cary, 226 S. W. (Mo.) 1. c. 834.]

III.   It is insisted by appellant that plaintiff recovered under the allegations of his amended reply, and hence took a departure from the allegations of his petition. The latter alleges that plaintiff was the owner in Departure. fee of the real estate in controversy, and that appellant claims some interest in said real estate. The court was thereupon requested to ascertain and determine the respective titles of plaintiff and appellant to said land.

Turning to the record we find it was admitted at the trial "by both plaintiff and defendant, that Mollie Kramer-Knight-Dunkey was the common source of title under which both parties claim, and the said Mollie Kramer, Mollie Knight and Mollie Dunkey are all one and the same person." Plaintiff then read in evidence a war-

292 Mo.—14

ranty deed from Mollie Dunkey and Max Dunkey, her husband, to William N. Barron, dated the 18th day of October, 1915, filed for record on the 23rd day of October, 1915, and recorded in the deed records of Butler County, Missouri, in Book 120, at page 138. The expressed consideration in the above deed is $4,000. It conveys "all that part of lot fifty-one of the original town, now city, of Poplar Bluff, more particularly described as follows: Beginning at a point on the west line of Main Street, nine inches north from the southeast corner of said lot fifty-one, running thence north along the said west line of Main Street, thirty-four feet to the southeast corner of the brick building commonly known as the Orchard building; running thence west parallel with Poplar Street, one hundred and four feet; running thence south parallel with Main Street, thirty-four feet; and running thence east parallel with Poplar Street, one hundred and four feet to the place of beginning." Plaintiff then offered in evidence another general warranty deed, dated October 20, 1915, filed for record October 23, 1915, from Mollie Dunkey and Max Dunkey, her husband, to William N. Barron and James J. Barron, conveying the following described real estate, in Butler County, Missouri, to-wit: "All the part of lots fifty-one and fifty-two in the original town, now city, of Poplar Bluff, more particularly described as follows, to-wit: Beginning at a point in said lot fifty-two, .82 feet north from the southeast corner of the said lot, running thence north along the west line of Main Street, twenty-three feet to a point nine inches north of the southeast corner of said lot fifty-one, running thence west parallel with Poplar Street, one hundred and four feet; running thence south parallel with Main Street, twenty-three feet; running thence east, one hundred and four feet to the place of beginning."

Plaintiff was sworn as a witness and testified, that he was acquainted with the location of this plot of ground, 8½ feet by thirty feet; that it is located in lot 51 supra; that it is a part of the lot or parcel of ground conveyed

by Mollie Dunkey and husband to him on the 18th day of October, 1915, by the warranty deed aforesaid.

Plaintiff then rested his case in chief.

It will be observed from the foregoing, that plaintiff made a prima-facie case in chief, under the averments of both the petition and answer, without any reference to the allegations of the reply. We are therefore of the opinion, that there was no departure as to this branch of the case.

IV. Appellant, in its answer heretofore set out, claimed to be the owner of the real estate in controversy, and asked the court to ascertain and determine, as between it and plaintiff, the title thereto. After respondent's case in chief was closed, appellant offered its evidence, and plaintiff, in rebuttal, under the issues presented in its reply, offered proof tending to show that appellant's title to said real estate was invalid. The contention of appellant that plaintiff took a departure in its reply is not sustained by the record. Especially is this true, in proceedings of this character, under Section 1970, Revised Statutes 1919, where the question of title may be determined under either the petition or answer. The later not only contained a general denial, but it asserted ownership in appellant, and called upon the court to determine the title as between the parties hereto. The reply met this issue tendered in the answer and, hence, there was no departure.

*Departure: Pleading.*

V. Reverting to the merits of the controversy, we are confronted at the outset with the question, whether the case before us is one at law or in equity. The reply pleads very fully matters by way of equitable estoppel which, if sustained, will preclude defendant from asserting title to the land in question under its warranty deed of September 3, 1895, from Mollie Kramer and husband to said Wright

*Action at Law or in Equity.*

& Dalton Hardware Company, now appellant. In view of the foregoing, we are of the opinion that the case should be disposed of here, as a proceeding in equity, in which it becomes our duty to consider the evidence, and pass upon the merits of the case. [Lee v. Conran, 213 Mo. l. c. 411-12; Hauser v. Murray, 256 Mo. l. c. 64-5; Hynds v. Hynds, 202 S. W. (Mo.) 387; Colburn v. Krenning, 220 S. W. (Mo.) l. c. 937; Schneider v. Schneider, 224 S. W. (Mo.) 1; State ex rel. v. Reynolds, 232 S. W. (Mo.) l. c. 688.]

The case was tried in the court below as a proceeding in equity.

VI. On the merits of the controversy, we find from the record that Mollie Kramer, the common source of title, with her husband, on September 3, 1895, executed and delivered to the Wright & Dalton Hardware Company, now appellant, a warranty deed for the 8½ by 30 feet strip of land in controversy, with other land; that said deed was filed for record in the Recorder's office of Butler County, Missouri, on September 6, 1895. The strip of ground in question here remained unimproved until 1901, when the lease hereafter mentioned was executed. Appellant's answer correctly describes what occurred, in respect to said lease, as follows:

*Equitable Estoppel.*

"Defendant, Wright-Dalton-Bell-Anchor Store Company, further answering, says that it is in possession of all the property described in plaintiff's petition as his tenant under and by virtue of a certain lease, entered into on the first day of June, 1901, by and between Mrs. W. D. Knight, the then owner of said land as lessor and this defendant as lessee, in which said lease plaintiff is assignee of the lessor, Mrs. Knight, whereby the lessor in the said lease leased the premises described in plaintiff's petition to the defendant for a monthly rental of forty dollars, payable monthly in advance on the first day of each and every month, during the term of said lease, and the further payment as rent of all state, coun-

ty and municipal taxes, whether general or special, including special assessments that might be assessed against the premises during the term of the lease, and which said lease will expire at the end of the term of sixteen years, nine months and eight days from the first day of June, 1901.''

A copy of said lease, marked exhibit ''A'' was filed with, and made a part of, said answer.

It is undisputed, that appellant took charge of the real estate in controversy, under said lease, in 1901, as the tenant of Mrs. W. D. Knight, now Mollie Dunkey, plaintiff's grantor, made certain improvements thereon, and continued as such tenant until the termination of said lease. That is to say, appellant actually occupied the property in question until about 1911 or 1912, and from said date thereafter held possession of same as alleged in the answer, through its tenant, the Hart-O'Neal Dry Goods Company, joined as a defendant herein. It further appears from the evidence that the officers of appellant, before plaintiff purchased the land in question, in the presence of respondent, testified in certain litigation then pending, that appellant was in possession of the property in controversy, under a lease from Mollie Knight, as her tenant. James L. Dalton, president of appellant, testified as follows:

''When I signed the lease mentioned, I did not know that there was any overlapping of the property described in the lease and the property I had bought from Mollie Kramer. . . . I made no improvement on the other part of the lot across the alley until after I had entered into the lease with Mollie Knight in 1901—I had left that part unimproved, except for the alley that we built, and that unimproved condition caused me to forget about the fact that our deed ran back into the lot, taking in a part of the lot which was described in the lease—at that time I didn't look up my deeds, for it was several years afterwards; later when I had occasion to look them up I found that our lease covered some of the same property which I had purchased, to which we had title.

On cross-examination, Mr. Dalton testified that Mr. Knight told him something about Mrs. Knight owning a piece of ground in the middle of appellant's building, and told him they were going to explode a bomb in appellant's camp some day. He further testified: "That was about the time of the incident I have related, so I got my deeds to see if he owned some property in there, to find out about this bombshell he was going to explode. That was about 1909 or 1910. After that, I continued to pay rent to Mrs. Knight and to her grantee up until 1918."

It thus appears, from the undisputed evidence, that appellant, in 1909 or 1910, had actual notice that the property in controversy was covered by said lease, and was also described in its own deed. Notwithstanding Mrs. Knight's threatened bomb, appellant's president and officers permitted said lease to remain of record, thereby declaring to the public that Mollie Knight was the owner of said property, at the time of the execution of said lease, and made no effort to have the same corrected but, on the contrary, continued in possession of said property, under the lease aforesaid, and paid the rent thereon to Mollie Knight and this plaintiff, until the termination of said lease in March, 1918. Appellant is in no position to charge respondent with negligence, in failing to have an abstract of title made, when its own public acts and conduct aforesaid indicated that Mrs. Knight was the owner of said land and that it was in possession of same as her tenant.

While matters were in this shape, the plaintiff bought the property in controversy, with other land, and received from Mollie Dunkey, formerly Mollie Knight, and her husband, the warranty deed therefor, of date, October 18, 1915.

Did respondent purchase the property in question in good faith without notice that appellant had a deed from Mrs. Kramer therefor? Plaintiff testified in substance that ever since 1901 he had known that the Wright-Dalton-Bell-Anchor Store Company had been in possession

of the land in controversy, as tenant of Mollie Kramer, afterwards Mollie Knight and Mollie Dunkey; that he believed implicitly that Mollie Dunkey was the unchallenged owner in fee of the property in dispute here, subject to said lease; that he had no abstract of title when he bought said land, but examined the lease as recorded, and prepared the two deeds to himself from Mollie Dunkey, heretofore mentioned; that he never saw any abstract of title until a year or more after he bought; that he examined the record before purchasing, to ascertain whether Mollie Dunkey had made a conveyance of said land after the execution of said lease, to any one else; that in purchasing the property, he took it for granted that she was the owner of same; that he was asked by Daniel Kirby, of St. Louis, Missouri, who represented Mollie Knight, to assist in disposing of the 23-foot tract south of the property in question; that he was unable to dispose of same and, after negotiations, through Kirby, bought the real estate described in the petition from Mollie Dunkey, the common source of title, on October 18, 1915; that he had no actual knowledge of the existence of the deed from Mollie Kramer to the Wright and Dalton Hardware Company, now appellant; that if he had known of said deed, it would have prevented him from purchasing said property.

In other words, the evidence shows that plaintiff, relying on the fact that a tenant could not dispute its landlord's title, under the circumstances of this case, examined the lease, and concluded from the recording of same that Mollie Dunkey was the owner of same, and that appellant was her tenant. He knew that appellant was occupying the property in controversy as such tenant, and was paying rent therefor.

We, therefore, find from the evidence that James L. Dalton, the president and business manager of appellant, in 1909 or 1910, knew that the strip of ground in question here, was contained in the deed from Mrs. Kramer, made in 1895, to said Wright and Dalton Hardware Company, now appellant, and likewise knew, in 1909 or 1910, that

the property in controversy, was included in the lease aforesaid of 1901, from Mrs. W. D. Knight to appellant; that the latter made no effort, and took no steps, to cancel said lease, as to the property in controversy, or otherwise; that it elected to let said lease remain as recorded, and to remain as Mrs. Knight's tenant thereunder and, in so doing, thereby induced this plaintiff to purchase said property on October 18, 1915, from Mollie Knight, now Mollie Dunkey, as absolute owner thereof. We find that respondent, in good faith, for value, without actual notice of appellant's deed, purchased said land, under the belief that Mollie Knight, the common source of title, was the owner thereof, and that appellant was in possession of same as her tenant, under said lease.

Regardless of all other questions in the case, based upon the plainest principles of equity and justice, we have reached the conclusion that appellant, by reason of the matters aforesaid, is estopped from asserting title to the real estate described in the petition, under its warranty deed from Mollie Kramer and husband, of date, September 3, 1895, filed for record on September 6, 1895, and recorded in Book 41, at page 186, of the Recorder's office of Butler County, Missouri. The above conclusion is sustained by many authorities, some of which are as follows: Skinner v. Stouse, 4 Mo. 65; Rice v. Bunce, 49 Mo. l. c. 235; Thistle v. Buford, 50 Mo. l. c. 280-1; Austin v. Loring, 63 Mo. 19; Stevenson v. Saline County, 65 Mo. l. c. 429; Raley v. Williams, 73 Mo. 310-11; Guffey v. O'Reiley, 88 Mo. 418-428-9; Railroad v. Bridge Co., 215 Mo. l. c. 296 and following; Proctor v. Nance, 220 Mo. 104; Hector v. Mann, 225 Mo. l. c. 244 and following; Lumber Co. v. Craig, 248 Mo. l. c. 332-3; Titus v. Development Co., 264 Mo. l. c. 248-9, 174 S. W. 432; Wood v. Trust Co., 265 Mo. l. c. 525, 178 S. W. l. c. 204; Milan Bank v. Richmond, 280 Mo. l. c. 38 and following, 217 S. W. 74; Sebree v. Ry. Co., 212 S. W. (Mo.) l. c. 15-6; Schneider v. Schneider, 224 S. W. (Mo.) l. c. 4-5; Marley v. Norman's L. & Mfg. Co., 232 S. W. (Mo.) l. c. 708.

Barron v. Store Co.

In Guffey v. O'Reiley, 88 Mo. l. c. 429, SHERWOOD, J., in an able and exhaustive review of the authorities, said:

"This doctrine of equitable estoppel lies at the foundation of morals; especially concerns conscience and equity; under its benign rule, entitled as it is, like other equitable doctrines, to a fair and liberal application, fraud is suppressed, and honesty and fair dealing promoted; conduct becomes equivalent to representations and acts to direct statements. Such estoppels may be given in evidence, and operate as effectually as technical estoppels; they cannot in the nature of things be subjected to fixed and settled rules of universal application like legal estoppels, nor hampered by the narrow confines of a technical formula."

In Lumber Co. v. Craig, 248 Mo. l. c. 333, LAMM, J., very clearly and forcefully declares the principle of law which should govern this case, as follows:

"Nor are we willing to stand for the proposition that a party can be put in possession of real estate by the owner of the legal title under a contract creating a relation in the nature of that of landlord and tenant, and then by a change in mental attitude assert the right to hold over under a claim of ownership, and have such right allowed in a court of justice in a possessory action by the true owner. May A get possession, as tenant of B and then repudiate B's title and hold over as owner? It is not so written in the law."

There are other questions presented in the elaborate briefs of counsel, which we have fully considered, but without expressing our views with reference thereto, prefer to rest our decision upon the principles of law heretofore announced.

We are of the opinion, that the trial court reached a correct conclusion in its disposition of the case. The judgment below was for the right party, and is accordingly affirmed. *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.